**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| LEGAL AID CHICAGO, | ) | |
| | ) | Case No. 1:23-cv-4809 |
| Plaintiff, | ) | |
| | ) | Magistrate Judge Jeffrey Cummings |
| v. | ) | |
| | ) | |
| HUNTER PROPERTIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**<u>DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS</u>**

John S. Letchinger
Maria A. Boelen
Katharine H. Walton
**BAKER & HOSTETLER LLP**
One North Wacker Drive, Suite 4500
Chicago, IL 60606
Telephone: 312.416.6200
Facsimile: 312.416.6201
jletchinger@bakerlaw.com
mboelen@bakerlaw.com
kwalton@bakerlaw.com

*Attorneys for Defendant Hunter Properties, Inc.*

**Table of Contents**

Introduction and Background ................................................................................................ 1

Argument ............................................................................................................................... 2

    I.     Legal Standard. ................................................................................................. 2

    II.    Legal Aid Cannot Establish Subject Matter Jurisdiction over Its Claims Because Its Alleged Injuries Were Not Proximately Caused by Hunter Properties. ....................................................................................................... 4

    III.   Even if Legal Aid Has Standing, Counts I and II Insufficiently Allege a Plausible Disparate-Impact Claim. ..................................................................... 9

    IV.   Count III Fails to Allege a Viable Claim for Violation of the ICFA. ................... 12

        A.    Legal Aid's ICFA Claim Fails for Lack of Standing. ............................... 12

        B.    Alternatively, Legal Aid Insufficiently Pleads a Cognizable ICFA Claim. ......................................................................................................... 13

Conclusion ............................................................................................................................. 15

i

## Table of Authorities

**Page(s)**

**Cases**

*Anthony v. Country Life Mfg., LLC.*,
    70 F. App'x 379 (7th Cir. 2003) ....................................................................................13, 14

*Apex Digital, Inc. v. Sears, Roebuck & Co.*,
    572 F.3d 440 (7th Cir. 2009) ..............................................................................................2, 3

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................................3

*Bank of Am. Corp. v. City of Miami, Fla.*,
    581 U.S. 189 (2017) .............................................................................................................4, 9

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................................3

*Bell v. City of Country Club Hills*,
    841 F.3d 713 (7th Cir. 2016) ................................................................................................4

*Bonilla v. Ancestry.com Operations Inc.*,
    574 F. Supp. 3d 582 (N.D. Ill. 2021) ................................................................................12

*CHS Acquisition Corp. v. Watson Coatings, Inc.*,
    No. 17-CV-4993, 2018 WL 3970137 (N.D. Ill. Aug. 20, 2018) ............................................12

*Cnty. of Cook, Illinois v. Wells Fargo & Co.*,
    314 F. Supp. 3d 975 (N.D. Ill. 2018) ................................................................................5, 9

*Cnty. of Cook v. Bank of Am. Corp.*,
    No. 14 C 2280, 2018 WL 1561725 (N.D. Ill. Mar. 30, 2018) ..................................................5

*Common Cause Indiana v. Lawson*,
    937 F.3d 944 (7th Cir. 2019) ................................................................................................7

*Garrett v. RentGrow, Inc.*,
    No. 04 C 8309, 2005 WL 1563162 (N.D. Ill. July 1, 2005) .............................................13, 14

*Havens Realty Corp. v. Coleman*,
    455 U.S. 363 (1982) ................................................................................................................7

*H.O.P.E., Inc. v. Eden Mgmt. LLC*,
    128 F. Supp. 3d 1066 (N.D. Ill. 2015) ................................................................................7

*Huskey v. State Farm Fire & Cas. Co.*,
  No. 22 C 7014, 2023 WL 5848164 (N.D. Ill. Sept. 11, 2023)...............................................10

*Keep Chicago Livable v. City of Chicago*,
  913 F.3d 618 (7th Cir. 2019) ...................................................................................................6

*Kemper v. Deutsche Bank AG*,
  911 F.3d 383 (7th Cir. 2018) ...................................................................................................4

*Kim v. Carter's Inc.*,
  598 F.3d 362 (7th Cir. 2010) .................................................................................................14

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992).................................................................................................................3

*MacNeil Auto. Prod., Ltd. v. Cannon Auto. Ltd.*,
  715 F. Supp. 2d 786 (N.D. Ill. 2010) .....................................................................................13

*Maxwell v. Sanofi-Aventis U.S. LLC*,
  No. 15-CV-10095, 2016 WL 3633321 (N.D. Ill. July 6, 2016)..............................................14

*Nat'l Fair Hous. All. v. Deutsche Bank Nat'l Tr.*,
  No. 18 CV 839, 2019 WL 5963633 (N.D. Ill. Nov. 13, 2019)............................................5, 7

*Petrizzo v. DeVry Educ. Grp. Inc.*,
  No. 16 CV 9754, 2018 WL 827995 (N.D. Ill. Feb. 12, 2018)................................................15

*Robinson v. Toyota Motor Credit Corp.*,
  775 N.E.2d 951 (Ill. 2002) .....................................................................................................14

*Swanigan v. City of Chicago*,
  881 F.3d 577 (7th Cir. 2018) ...................................................................................................2

*TBS Grp., LLC v. City of Zion, Illinois*,
  No. 16-CV-5855, 2017 WL 5129008 (N.D. Ill. Nov. 6, 2017) ..............................................11

*Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc.*,
  576 U.S. 519 (2015)........................................................................................................9, 10, 11

*Thrasher-Lyon v. Illinois Farmers Ins. Co.*,
  861 F. Supp. 2d 898 (N.D. Ill. 2012) .....................................................................................12

*Trimuel v. Chicago Hous. Auth.*,
  No. 22 CV 03422, 2023 WL 6290485 (N.D. Ill. Sept. 27, 2023)...........................................11

**Statutes**

Fair Housing Act, 42 U.S.C. § 3604(a)................................................................................ *passim*

Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/2 ............................. *passim*

**Rules**

Fed. R. Civ. P. 12..................................................................................................................2, 3, 11

**Other Authorities**

Chicago Department of Housing, Annual Report (2022), *available at*
    https://www.chicago.gov/content/dam/city/depts/doh/plans/Annual%20Report
    %20Final%208.29.23.pdf .............................................................................................................8

Chicago Metropolitan Agency for Planning, Brief Overview of Housing Unit
    Counts and Tenure, *available at* https://www.cmap.illinois.gov/updates/all/-
    /asset_publisher/UIMfSLnFfMB6/content/brief-overview-of-housing-unit-
    counts-and-tenure..................................................................................................................7

**Introduction and Background**

As alleged in the Complaint (Doc. 1), Defendant Hunter Properties, Inc. ("Hunter Properties"), "manages more than 2,500 apartments across 60 locations in Chicago." (Compl. ¶ 21.) Hunter Properties is a family-owned Chicago-based building management company that rents directly to tenants in a variety of Chicago neighborhoods. (Ex. 1, Declaration of Hilary Frey ("Frey Decl.") ¶ 3.) Prospective tenants may apply to one of Hunter Properties' buildings through an online housing application and are required to undergo a background check conducted by a third-party tenant screening provider. (Compl. ¶¶ 14-15.) Plaintiff Legal Aid Chicago ("Legal Aid") filed this lawsuit challenging the following language included in the online rental application terms and conditions on Hunter Properties' website: "Prior evictions filings will result in denial. False or misleading statements will result in denial." (*Id.* at ¶ 25.)

Legal Aid alleges that Hunter Properties' policy of screening applicants for prior evictions has a disparate impact on the basis of race and sex in violation of the Fair Housing Act ("FHA"), 42 U.S.C. § 3604(a), and constitutes an unfair practice in violation of the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA"), 815 ILCS 505/2. (Compl. ¶ 16.) Legal Aid's theory is based entirely on an assumption that Hunter Properties strictly applies the online rental application terms and conditions stated on its website and statistics showing that "Black people, and especially Black women, are disproportionally the subject of eviction filings in court." (*Id.* at ¶¶ 33-40.) Legal Aid, however, does not tie Hunter Properties' specific practices and policies to Legal Aid's alleged damages or any actual observed or measured disparity in the individuals and families who obtain housing from Hunter Properties. Instead, Legal Aid seeks to pursue a generic claim against Hunter Properties that would be equality as applicable to any "of the many landlords across the county that" Legal Aid claims "are using discriminatory policies to categorically reject housing applicants

1

who have *ever* found themselves connected with an eviction case." (*Id.* at ¶ 1.) The link between Hunter Properties' challenged conduct and Legal Aid's alleged injuries is far too tentative and insubstantial to support liability against Hunter Properties. Accordingly, the Complaint fails both for lack of standing and failure to state a claim upon which relief can be granted.

<u>**Argument**</u>

The Complaint alleges three causes of action: (1) race discrimination in violation of the FHA (Count I), (2) race and sex discrimination in violation of the FHA (Count II), and (3) unfair residential leasing in violation of the ICFA (Count III). Legal Aid brings these claims on its own behalf under the theory of organization standing. (*See id.* at ¶ 69.) But it fails to establish a direct causal link between Hunter Properties' challenged conduct and Legal Aid's alleged diversion of resources. Without such a link, Legal Aid cannot establish the proximate cause necessary to support Article III standing. For this reason alone, the Complaint should be dismissed. But even if this Court is inclined to permit Legal Aid to proceed based on the amorphous injury of diversion of resources, all three counts fail to state a claim upon which relief can be granted. Counts I and II fail to allege the elements of a disparate-impact claim, and Count III insufficiently alleges statutory standing, as well as the elements of an ICFA claim. Thus, the Complaint is ripe for dismissal pursuant to either Rule 12(b)(1) or Rule 12(b)(6).

**I.      Legal Standard.**

Legal Aid lacks constitutional standing under the FHA, and its Complaint against Hunter Properties should be dismissed pursuant to Rule 12(b)(1). "Questions of standing are appropriately addressed via a motion to dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction." *Swanigan v. City of Chicago*, 881 F.3d 577, 582 (7th Cir. 2018). "Standing is an essential component of Article III's case-or-controversy requirement." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009). To establish standing, Legal Aid has the burden of

showing that (1) it has suffered an "injury in fact" that is (a) "concrete and particularized" and (b) "actual or imminent, not 'conjectural' or 'hypothetical;'" (2) "a causal connection between the injury and the conduct complained of"; and (3) it "'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561-62 (1992). Absent Article III standing, a federal court is obligated to dismiss the suit. *Apex Digital*, 572 F.3d at 443. A factual challenge to jurisdiction lies if "the complaint is formally sufficient but the contention is that there is in fact no subject matter jurisdiction." *Id.* at 444. The Court "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Id.* Here, Legal Aid's claims cannot survive either a facial or a factual attack on jurisdiction because there is an insufficient casual connection between its alleged injuries and Hunter Properties' conduct.

Alternatively, Legal Aid's Complaint must be dismissed pursuant to Rule 12(b)(6), which authorizes the dismissal of a complaint that fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The motion should be granted if the allegations in the complaint, even when accepted as true and viewed in the light most favorable to the plaintiff, "could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. While Plaintiff is not required to provide "detailed factual allegations," the complaint must not merely state "labels and conclusions" or "a formulaic recitation of the

elements of a cause of action." *Bell v. City of Country Club Hills*, 841 F.3d 713, 716-17 (7th Cir. 2016).

## II.     Legal Aid Cannot Establish Subject Matter Jurisdiction over Its Claims Because Its Alleged Injuries Were Not Proximately Caused by Hunter Properties.

Legal Aid alleges all three counts of the Complaint on its own behalf based on the alleged organizational injuries of diversion of resources and frustration of mission. (Compl. ¶ 69.) To establish standing based on these alleged injuries, Legal Aid must establish a direct causal link between these alleged injuries and Hunter Properties' challenged policy. *See Bank of Am. Corp. v. City of Miami, Fla.*, 581 U.S. 189, 202-03 (2017) ("*City of Miami*"). Legal Aid has insufficiently pled such a link and cannot do so as a matter of fact. Therefore, there is no proximate cause that can support Legal Aid's Article III standing.

In *City of Miami*, the Supreme Court explained that "proximate cause under the FHA requires 'some direct relation between the injury asserted and the injurious conduct alleged'" and alleged harms that are "'too remote' from the defendant's unlawful conduct" cannot support Article III standing. *Id.* at 202-03. The Court further explained that "[t]he housing market is interconnected with economic and social life. A violation of the FHA may, therefore, 'be expected to cause ripples of harm to flow' far beyond the defendant's misconduct." *Id.* at 202. Nothing in the FHA, however, "suggests that Congress intended to provide a remedy wherever those ripples travel." *Id.* The applicable proximate cause standard generally does not permit going "beyond the first step" in the causal chain. *Id.* The Seventh Circuit has further stated that "foreseeability, directness, and the substantiality of the defendant's conduct" are all relevant to the proximate cause analysis. *Kemper v. Deutsche Bank AG*, 911 F.3d 383, 392 (7th Cir. 2018).

In the years since *City of Miami*, multiple courts in this District have applied the Supreme Court's analysis and found that certain claimed injuries were too remote from the alleged

4

discriminatory acts to support proximate cause under the FHA. *See, e.g., Cnty. of Cook, Illinois v. Wells Fargo & Co.*, 314 F. Supp. 3d 975, 988 (N.D. Ill. 2018) (finding that, even if the defendant's conduct caused a disproportionate increase in foreclosures in minority communities, Cook County could not bring FHA claims based on attenuated harms such as "lost property tax revenue, increased demand for county services, and diminished racial balance and stability"); *Cnty. of Cook v. Bank of Am. Corp.*, No. 14 C 2280, 2018 WL 1561725, at *5 (N.D. Ill. Mar. 30, 2018) (holding "that the bulk of the injuries the County asserts—tax losses and increased costs for county services such as police patrol and support services to evicted borrowers—do not flow directly from the" defendant's alleged discriminatory lending practices).

Here, Legal Aid alleges various harms relating to frustration of its mission of "maximizing low-income Cook County residents' access to safe, decent and affordable housing, including by preventing and reducing the impacts of evictions," and diversion of resources. (Compl. ¶ 65.) Legal Aid further alleges that it spends resources on the following:

- "representing tenants in seeking to seal *all* types of evictions records";

- "providing training and education to tenants, landlords, and others on the harms and discriminatory impact of denying prospective renters on the basis of eviction records";

- "pursuing more cases through to trial so that a tenant can show that they won their eviction case";

- "resolving threatened evictions when tenants receive a notice of termination of tenancy prior to an eviction case being filed"; and

- Advising "clients facing the possible threat of a soon-to-be filed eviction case . . . on the difficulty of finding new housing with a history of an eviction filing."

(*Id.* at ¶¶ 66-68.) None of these activities are fairly traceable to Hunter Properties' challenged conduct, and Legal Aid fails to allege any direct impairment to its activities flowing from Hunter Properties' prospective tenant screening activities.

Both directness and substantiality are lacking. Legal Aid does not identify any actions taken in direct response to Hunter Properties' challenged conduct, nor does it allege that any of its work would be reduced or changed if only Hunter Properties changed its prospective tenant screening policies. Hunter Properties' role in the availability of affordable housing in Cook County is interconnected with numerous other landlords and third parties such that Hunter Properties' prospective tenant screening policies do not plausibly have more than a minimal impact on the system. Legal Aid's alleged harms could be caused by a wide array of factors outside of Hunter Properties' control, including, for example, the third parties who filed evictions against Legal Aid's clients, other landlords who screen potential tenants for prior evictions, and the third-party tenant screening companies identified in the Complaint (*id.* at ¶ 32). Legal Aid has not alleged any sequence of events leading to its alleged injuries that includes Hunter Properties' prospective tenant screening policies as a substantial factor, and simply directing Hunter Properties to change these policies would not have any direct effect on the costs incurred by Legal Aid in carrying out the activities alleged in the Complaint. This Court cannot meaningfully redress Legal Aid's alleged injuries through a judgment entered solely against Hunter Properties because Legal Aid will need to continue engaging in the exact same activities to help its clients apply to housing managed by "one of the many" other landlords who use a similar policy, which the Complaint implicitly acknowledges. (*See id.* at ¶ 1 & n.1 ("Hunter Properties . . . is one of the many landlords across the county that are using discriminatory policies to categorically reject housing applicants who have *ever* found themselves connected with an eviction case.").)

It is the lack of direct response or tie to Hunter Properties' challenged conduct that distinguishes Legal Aid's claims here from other cases in which plaintiffs were able to establish organizational standing. *Compare Keep Chicago Livable v. City of Chicago*, 913 F.3d 618, 625

(7th Cir. 2019) (finding that organization did not have standing to challenge constitutionality of ordinance because it failed to "tether[] any particular requirement of the Ordinance to a specific harm to the organization"), *and H.O.P.E., Inc. v. Eden Mgmt. LLC*, 128 F. Supp. 3d 1066, 1078 (N.D. Ill. 2015) ("*Havens* is distinguishable from this case because, unlike [the plaintiff in *Havens*], HOPE cannot trace any deflection of its resources to discrimination by the State Defendants."), *with Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982) (holding that organization had standing in its own right under the FHA because defendant's alleged practice of steering black apartment hunters away from its apartment complexes "perceptibly impaired HOME's ability to provide counseling and referral services"), *and Common Cause Indiana v. Lawson*, 937 F.3d 944, 952 (7th Cir. 2019) (finding voter-advocacy organizations had standing to challenge election laws because the organizations demonstrated that the law would likely create more work for them through increased call volumes and other activities aimed at educating voters about the effects of the law), *and Nat'l Fair Hous. All. v. Deutsche Bank Nat'l Tr.*, No. 18 CV 839, 2019 WL 5963633, at *6 (N.D. Ill. Nov. 13, 2019) ("Here, there is a 'clear, direct and immediate' path between Defendants' alleged discriminatory lack of maintenance and Plaintiffs' response to that lack of maintenance through investigations, reporting, and advocacy.").

Alternatively, even if Legal Aid can plausibly allege a causal chain, Legal Aid cannot establish proximate cause as a matter of fact. Hunter Properties is only one of many landlords in Cook County who screen prospective tenants for past evictions. (Compl. ¶ 1.) It is a small family-owned business with seven employees that generates approximately $1.2 million yearly in gross revenue. (Frey Decl. ¶ 3.) Hunter Properties focuses on lower priced housing options and serves lower income families. (*Id.*) According to the Chicago Metropolitan Agency for Planning, 2010 Census data reflected over 820,000 renter-occupied units in Cook County. (Chicago Metropolitan

7

Agency for Planning, Brief Overview of Housing Unit Counts and Tenure, *available at* https://www.cmap.illinois.gov/updates/all/-/asset_publisher/UIMfSLnFfMB6/content/brief-overview-of-housing-unit-counts-and-tenure (last visited Oct. 12, 20223).) The Chicago Department of Housing stated in its 2022 Annual Report that it supported and monitored more than 25,000 affordable rental homes in more than 400 buildings across Chicago. (Chicago Department of Housing, Annual Report 15 (2022), *available at* https://www.chicago.gov/content/dam/city/depts/doh/plans/Annual%20Report%20Final%208.29.23.pdf (last visited Oct. 12, 2023).) Hunter Properties' 2,500 apartments across 60 locations is mere fraction of the available housing in Cook County and cannot plausibly have a substantial effect on Legal Aid's distribution of resources.

Moreover, contrary to Legal Aid's allegations, Hunter Properties does not categorically exclude all prospective tenants with any history of an eviction case against them or apply its online rental application terms and conditions without exception. (Frey Decl. at ¶ 4.) Following the filing of this lawsuit, Hunter Properties revised its online rental application terms and conditions to more accurately reflect its prospective tenant screening process. (*Id.* at ¶ 5.) Hunter Properties carefully considers and reviews each rental application for a variety of criteria, including credit history, rental history, and income, and it affords prospective tenants the opportunity to explain negative information. (*Id.*) Hunter Properties does not reject potential tenants with satisfactory credit histories. (*Id.*) In addition, well before the filing of this lawsuit, Hunter Properties initiated a policy of screening potential tenants for evictions only during the 12-month period prior to submission of their rental applications. (*Id.* at ¶ 6.) For these reasons, Hunter Properties' prospective tenant screening policies cannot be the proximate cause of Legal Aid's alleged injuries as a matter of fact.

Legal Aid's alleged injuries are too far removed from Hunter Properties' prospective tenant screening process to satisfy the proximate cause requirement, both facially and factually, and any attempt to calculate damages in this case would be far too speculative and administratively difficult. *See Wells Fargo & Co.*, 314 F. Supp. 3d at 987 ("*City of Miami* teaches that the proximate cause inquiry also requires 'an assessment of what is administratively possible and convenient.'"). Accordingly, Legal Aid cannot establish Article III standing, and this Court lacks subject matter jurisdiction over the Complaint.

III.    **Even if Legal Aid Has Standing, Counts I and II Insufficiently Allege a Plausible Disparate-Impact Claim.**

Legal Aid's race discrimination in violation of the FHA claim (Count I) and race and sex discrimination in violation of the FHA claim (Count II) do not plausibly allege a statistical disparity caused by Hunter Properties' specific policy. Both claims should be dismissed on the pleadings because they do not satisfy the robust causality requirement set forth by the Supreme Court in *Texas Department of Housing and Community Affairs v. Inclusive Communities Project, Inc.*, 576 U.S. 519 (2015) ("*Inclusive Communities*").

While the Supreme Court in *Inclusive Communities* recognized the viability of disparate-impact claims under the FHA, it cautioned that "disparate-impact liability has always been properly limited in key respects that avoid the serious constitutional questions that might arise under the FHA, for instance, if such liability were imposed based solely on a showing of a statistical disparity." *Id.* at 540. "Without adequate safeguards at the prima facie stage, disparate-impact liability might cause race to be used and considered in a pervasive way and 'would almost inexorably lead' governmental or private entities to use 'numerical quotas,' and serious constitutional questions then could arise." *Id.* at 542. The Supreme Court, therefore, directed lower

courts to "examine with care whether a plaintiff has made out a prima facie case of disparate impact" and to promptly resolve disparate-impact cases. *Id.*

"To establish a *prima facie* disparate-impact case, therefore, plaintiffs must 'allege facts at the pleading stage or produce statistical evidence demonstrating a causal connection,'" which "boils down to three elements: (1) a statistical disparity; (2) a specific policy; and (3) a causal connection." *Huskey v. State Farm Fire & Cas. Co.*, No. 22 C 7014, 2023 WL 5848164, at *7 (N.D. Ill. Sept. 11, 2023). *Inclusive Communities* further directs courts to apply a "robust causality requirement" to ensure "[r]acial imbalance . . . does not, without more, establish a prima facie case of disparate impact" and to protect "defendants from being held liable for racial disparities they did not create." *Inclusive Communities*, 576 U.S. at 542. For this reason, "a disparate-impact claim that relies on a statistical disparity must fail if the plaintiff cannot point to a defendant's policy or policies causing that disparity." *Id.*

Here, the Complaint merely alleges a racial imbalance in the pool of prospective tenants who have a connection to a past eviction, which is insufficient to state a prima facie disparate-impact case and satisfy the robust causality requirement. Legal Aid's theory appears to be that Hunter Properties "categorically exclude[s] would-be tenants who have any history of an eviction case against them," which must create a disparate impact because Black renters, and Black women in particular, are statistically "more likely to be sued in an eviction action." (Compl. ¶¶ 2, 7.) As to the second element, the specific Hunter Properties' policy Legal Aid seeks to challenge is not clearly identified as the Complaint defines "No-Evictions Policy" to "encompass the policies and practices of Hunter **(and other landlords)** that categorically reject prospective tenants with any connection to a past eviction." (Compl. at n.1 (emphasis added).) But even if the Court determines Legal Aid has sufficiently stated the second element, the first and the third elements fail.

The Complaint does not allege a statistical disparity with sufficient causal connection to a so-called "No-Evictions Policy" to survive a motion to dismiss. Legal Aid devotes several paragraphs of the Complaint to discussing statistical disparities in eviction filings. (*Id.* at ¶¶ 4-7, 12.) "As *Inclusive Communities Project* reminds courts, however, racial imbalance is not alone sufficient to make out a disparate impact claim: causation is still required." *TBS Grp., LLC v. City of Zion, Illinois*, No. 16-CV-5855, 2017 WL 5129008, at *9 (N.D. Ill. Nov. 6, 2017) (granting Rule 12(b)(6) motion to dismiss because the amended complaint was "devoid of allegations that plausibly suggest[ed] that [defendant had] *caused* the racially disproportionate impact that might result from the Ordinance" despite its offer of statistics showing "minorities [were] a disproportionate segment of [defendant]'s rental community"). "The FHA requires a more robust causal connection at the motion to dismiss stage." *Trimuel v. Chicago Hous. Auth.*, No. 22 CV 03422, 2023 WL 6290485, at *7 (N.D. Ill. Sept. 27, 2023) (citation omitted) ("While Plaintiff provides statistical evidence that women comprise the majority of domestic violence victims, she fails to sufficiently allege a causal connection between CHA's policies and their disparate impact on victims of domestic violence."). The statistical disparity identified by Legal Aid is insufficient to satisfy the statistical disparity element because it is not alleged to be, and is not in fact, caused by Hunter Properties, and for these same reasons, the causal connection element also fails.

Legal Aid's legal theory is entirely speculative as it does not allege an actual statistical disparity found in Hunter Properties' tenant population but merely alleges that one is possible because there is a statistical disparity in the pool of tenants who would be impacted by an alleged "No-Evictions Policy" if they attempted to complete Hunter Properties' online rental application. More is needed to sufficiently state a plausible disparate-impact claim. Thus, Counts I and II should be dismissed.

11

**IV.    Count III Fails to Allege a Viable Claim for Violation of the ICFA.**

Count III alleges that Hunter Properties committed an unfair business practice in violation of the ICFA by "disqualifying all prospective tenants with any prior eviction." (Compl. ¶ 81.) Legal Aid alleges this policy is stated in the terms and conditions of Hunter Properties' online rental application. (*Id.* at ¶ 25.) These allegations do not state a cognizable claim for violation of the ICFA, and Count III is ripe for dismissal for either lack of standing or failure to state a claim upon which relief can be granted.

**A.    Legal Aid's ICFA Claim Fails for Lack of Standing.**

Legal Aid lacks both Article III standing, for the reasons explained in Section II, *supra*, as well as statutory standing under the ICFA. To establish statutory standing under the ICFA, a non-consumer plaintiff, like Legal Aid, "must plead the following: '(1) that [its] actions were akin to a consumer's actions to establish a link between [it] and consumers; (2) how defendant's representations . . . concerned consumers other than [plaintiff]; (3) how defendant's particular [action] involved consumer protection concerns; and (4) how the requested relief would serve the interests of consumers.'" *Thrasher-Lyon v. Illinois Farmers Ins. Co.*, 861 F. Supp. 2d 898, 912 (N.D. Ill. 2012); *accord Bonilla v. Ancestry.com Operations Inc.*, 574 F. Supp. 3d 582, 596 (N.D. Ill. 2021).

The Complaint does not sufficiently allege any of these elements. First, Legal Aid is a legal aid organization that provides legal services (Compl. ¶ 20), not a consumer of residential rental services. *See, e.g., CHS Acquisition Corp. v. Watson Coatings, Inc.*, No. 17-CV-4993, 2018 WL 3970137, at *13 (N.D. Ill. Aug. 20, 2018) (holding company did not have standing to bring ICFA claim because it "did not purchase the [subject goods] for its own use"). This alone is fatal to Legal Aid's ICFA claim, but even if it were not, Legal Aid does not satisfy any of the other elements. Legal Aid's allegations relate to Hunter Properties' representations regarding prior evictions that

effect only a small subset of potential tenants, those with eviction records who apply to rent an apartment managed by Hunter Properties. (Compl. ¶ 81.) Legal Aid does not explain how this conduct is directed toward the market generally, and it is not significant enough to raise consumer protection concerns. *See MacNeil Auto. Prod., Ltd. v. Cannon Auto. Ltd.*, 715 F. Supp. 2d 786, 793 (N.D. Ill. 2010) ("The Seventh Circuit has noted that, for a non-consumer to have standing under the Consumer Fraud Act based on harm to consumers, the complained-of conduct must 'be of sufficient magnitude to be likely to affect the market generally.'"). Therefore, Count III should be dismissed for lack of standing.

### B. Alternatively, Legal Aid Insufficiently Pleads a Cognizable ICFA Claim.

Even if Legal Aid could establish standing, the Complaint simply does not state a coherent theory for unfair business practice in violation of the ICFA. "To state a claim under the Illinois Consumer Fraud Act, a plaintiff must allege: (1) a deceptive act or unfair practice by the defendant; (2) intent by the defendant that the plaintiff rely on that act or practice; (3) that the deception or unfair practice occur in the course of conduct involving trade and commerce; and (4) that the deceptive act or unfair practice proximately caused the plaintiff's injury." *Anthony v. Country Life Mfg., LLC.*, 70 F. App'x 379, 382 (7th Cir. 2003). The Complaint insufficiently pleads these elements.

First, Hunter Properties' alleged practice of disqualifying applicants with eviction histories has been recognized as insufficient to constitute an unfair practice under the ICFA. *See Garrett v. RentGrow, Inc.*, No. 04 C 8309, 2005 WL 1563162, at *3-4 (N.D. Ill. July 1, 2005) (dismissing ICFA claim on the pleadings because landlord's "refusal to reexamine or reverse its denial" of plaintiff's rental application based on a prior eviction judgment was not an unfair practice because plaintiff "could have sought subsidized housing elsewhere" and the practice related "only to those few consumers who have potentially errant information in their [background] reports"); *see also*

13

*Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 961 (Ill. 2002) (holding that the following factors are relevant to determining whether a practice is unfair under the ICFA: "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers"). Like *Garrett v. RentGrow*, Hunter Properties' alleged conduct cannot satisfy the unfair practice element because the policy does not prevent prospective tenants from seeking housing from other landlords, was disclosed to prospective tenants, and only impacts a small subset of prospective tenants with prior evictions.

Second, Legal Aid does not allege how Hunter Properties intended consumers to rely on this allegedly unfair practice. *See Maxwell v. Sanofi-Aventis U.S. LLC*, No. 15-CV-10095, 2016 WL 3633321, at *4 (N.D. Ill. July 6, 2016) ("[T]he statute requires intent for both deceptive and unfair conduct."). The Complaint is devoid of any allegations that Hunter Properties intended to apply its policies in a manner that is unfair or that it even knew tenants with sealed eviction records might be rejected or deterred from applying. *See Garrett*, 2005 WL 1563162, at *4 (finding that plaintiff failed to allege defendant "had an intent to deceive, defraud, or be unfair to her" or even that defendant knew it received false information regarding plaintiff's eviction history).

Finally, Legal Aid has not plead a cognizable injury under the ICFA nor that its alleged injuries were proximately caused by Hunter Properties' allegedly unfair practice. *See Anthony v. Country Life Mfg., LLC.*, 70 F. App'x 379, 383 (7th Cir. 2003) (finding that even if plaintiff's allegations rose to the level of unfair practice, plaintiff failed to allege that the unfair practice proximately caused an economic injury). For the reasons discussed in Section II, *supra*, Legal Aid has not sufficiently pled proximate cause, but even if it had, its alleged injuries cannot support an ICFA claim, which requires "actual pecuniary loss." *See Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010). Legal Aid does not attempt to quantify, or propose any method for doing so, the

14

value of the alleged resources it "was forced to divert" or of allegedly frustrating its mission. (*See* Compl. ¶ 69.) *See Petrizzo v. DeVry Educ. Grp. Inc.*, No. 16 CV 9754, 2018 WL 827995, at *6 (N.D. Ill. Feb. 12, 2018) ("A consumer-fraud complaint need not allege a precise damages amount or a fully-developed mathematical model for calculating damages. But it needs to allege facts sufficient to show that plaintiffs suffered actual, measurable, non-speculative damages."). Whether or not these damages can support organizational standing, they are too speculative to satisfy the injury element of an ICFA claim.

Accordingly, Count III fails to allege a plausible claim for unfair business practice in violation of the ICFA and should be dismissed.

### <u>Conclusion</u>

For the foregoing reasons, Hunter Properties respectfully requests that the Court dismiss Legal Aid's Complaint, with prejudice.

Dated: October 16, 2023

Respectfully submitted,

*/s/ Maria A. Boelen*

John S. Letchinger
Maria A. Boelen
Katharine H. Walton
**BAKER & HOSTETLER LLP**
One North Wacker Drive, Suite 4500
Chicago, IL 60606
Telephone: 312.416.6200
Facsimile: 312.416.6201
jletchinger@bakerlaw.com
mboelen@bakerlaw.com
kwalton@bakerlaw.com

*Attorneys for Defendant Hunter Properties, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this date, October 16, 2023, a true and correct copy of the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all attorneys of record.

*/s/ Maria A. Boelen*