**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| LEGAL AID CHICAGO, | ) | |
| | ) | Case No. 1:23-cv-4809 |
| Plaintiff, | ) | |
| | ) | Honorable Steven C. Seeger |
| v. | ) | |
| | ) | |
| HUNTER PROPERTIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS

John S. Letchinger
Maria A. Boelen
Katharine H. Walton
**BAKER & HOSTETLER LLP**
One North Wacker Drive, Suite 4500
Chicago, IL 60606
Telephone: 312.416.6200
Facsimile: 312.416.6201
jletchinger@bakerlaw.com
mboelen@bakerlaw.com
kwalton@bakerlaw.com

*Attorneys for Defendant Hunter Properties, Inc.*

**<u>Table of Contents</u>**

Introduction ............................................................................................................... 1

Argument ................................................................................................................... 1

    I.      Legal Aid Does Not Allege Injuries Proximately Caused by Hunter Properties.... 1

    II.     This Court Does Not Have Subject Matter Jurisdiction over Legal Aid's Claims. ................................................................................................................. 3

          A.    The Complaint Does Not Sufficiently Allege a Concrete Injury Fairly Traceable to Hunter Properties' Conduct to Support Constitutional Standing. ................................................................................................ 4

          B.    The Factual Record Establishes that Subject-Matter Jurisdiction Is Lacking. ............................................................................................... 6

          C.    Legal Aid's Injuries Are Not Redressable by a Favorable Decision in this Case. .............................................................................................. 7

    III.    The Complaint does Not Plausibly Allege a Disparate-Impact Claim under *Inclusive Communities*. ........................................................................................ 7

          A.    Legal Aid's Allegations Regarding a "Blanket No-Evictions Policy" Are Not Supported by Sufficient Factual Allegations. ............................ 7

          B.    Legal Aid's Alleged Statistical Disparity Does Not Show a Disparate Impact Caused by Hunter Properties. ......................................... 9

          C.    The Complaint Fails to Allege Robust Causation as Required by *Inclusive Communities*. ......................................................................... 10

    IV.    This Court Should Reject Legal Aid's Novel ICFA Theory. .............................. 12

          A.    Legal Aid Does Not Have Standing to Assert an ICFA Claim on Its Behalf. ....................................................................................... 13

          B.    Legal Aid Does Not Plausibly Plead the Elements of an ICFA Claim..... 14

Conclusion ............................................................................................................... 15

## <u>Table of Authorities</u>

**Page(s)**

**Cases**

*Abramov v. Home Depot, Inc.*,
    No. 17-CV-1860, 2018 WL 1252105 (N.D. Ill. Mar. 12, 2018)................................15

*Abrams v. City of Chicago*,
    811 N.E.2d 670 (Ill. 2004) ............................................................................15

*Anthony v. Country Life Mfg., LLC.*,
    70 F. App'x 379 (7th Cir. 2003) ....................................................................2

*Apex Digital, Inc. v. Sears, Roebuck & Co.*,
    572 F.3d 440 (7th Cir. 2009) ........................................................................6

*Bank of Am. Corp. v. City of Miami, Fla.*,
    581 U.S. 189 (2017)...........................................................................1, 2, 15

*Batson v. Live Nation Ent., Inc.*,
    No. 11 C 1226, 2013 WL 992641 (N.D. Ill. Mar. 13, 2013) ..................................14

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)....................................................................................8

*Betsey v. Turtle Creek Assocs.*,
    736 F.2d 983 (4th Cir. 1984) ......................................................................10

*Breeze v. Bayco Prod. Inc.*,
    475 F. Supp. 3d 899 (S.D. Ill. 2020)..............................................................13

*Brumit v. City of Granite City*,
    72 F.4th 735 (7th Cir. 2023) ........................................................................7

*Campbell v. City of Berwyn*,
    815 F. Supp. 1138 (N.D. Ill. 1993) ................................................................4

*City of Oakland v. Wells Fargo & Co.*,
    14 F.4th 1030 (9th Cir. 2021) ..................................................................1, 2, 3

*Cmty. Bank of Trenton v. Schnuck Markets, Inc.*,
    887 F.3d 803 (7th Cir. 2018) ..................................................................13, 15

*Common Cause Indiana v. Lawson*,
    937 F.3d 944 (7th Cir. 2019) ........................................................................4

*County of Cook v. Bank of America Corp.*,
   78 F.4th 970 (7th Cir. 2023) .................................................................................2, 3

*County of Cook v. HSBC North America Holdings Inc.*,
   136 F.Supp.3d 952 (N.D. Ill. 2015) .....................................................................9, 11

*Daley v. Jones Motor Co., Inc.*,
   743 F. App'x 35 (7th Cir. 2018) ................................................................................6

*In re Dealer Mgmt. Sys. Antitrust Litig.*,
   No. 18 C864, 2023 WL 4297644 (N.D. Ill. June 29, 2023) ......................................2

*Democratic Party of Wisconsin v. Vos*,
   966 F.3d 581 (7th Cir. 2020) ....................................................................................4

*Ellis v. City of Minneapolis*,
   860 F.3d 1106 (8th Cir. 2017) ................................................................................10

*Havens Realty Corp. v. Coleman*,
   455 U.S. 363 (1982)..............................................................................................4, 5

*Huskey v. State Farm Fire & Cas. Co.*,
   No. 22 C 7014, 2023 WL 5848164 (N.D. Ill. Sept. 11, 2023)................................10

*Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*,
   920 F.3d 890 (5th Cir. 2019) ...........................................................................11, 12

*Loop Spine & Sports Ctr., Ltd. v. Am. Coll. of Med. Quality, Inc.*,
   No. 22 CV 04198, 2023 WL 3585835 (N.D. Ill. May 22, 2023)............................14

*Louisiana Fair Hous. Action Ctr., Inc. v. Azalea Garden Properties, L.L.C.*,
   82 F.4th 345 (5th Cir. 2023) .................................................................................5, 6

*MacNeil Auto. Prod., Ltd. v. Cannon Auto. Ltd.*,
   715 F. Supp. 2d 786 (N.D. Ill. 2010) ....................................................................13

*Metro. Hous. Dev. Corp. v. Vill. of Arlington Heights*,
   558 F.2d 1283 (7th Cir. 1977) ................................................................................10

*Nat. Res. Def. Council v. Illinois Power Res., LLC*,
   202 F. Supp. 3d 859 (C.D. Ill. 2016) ......................................................................2

*Onvi, Inc. v. Radius Project Dev., Inc.*,
   No. 19 C 3201, 2020 WL 4607242 (N.D. Ill. Aug. 11, 2020)................................13

*Patel v. Zillow, Inc.*,
   No. 17 C 4008, 2018 WL 2096453 (N.D. Ill. May 7, 2018) ..................................13

*Plotkin v. Ryan*,
239 F.3d 882 (7th Cir. 2001) ......................................................................4

*Plotkin v. Ryan*,
No. 99 C 53, 1999 WL 965718 (N.D. Ill. Sept. 29, 1999)...........................5

*Robinson v. Toyota Motor Credit Corp.*,
775 N.E.2d 951 (Ill. 2002) ..................................................................12, 14

*Staub v. Proctor Hosp.*,
562 U.S. 411 (2011)....................................................................................2

*TBS Grp., LLC v. City of Zion, Illinois*,
No. 16-CV-5855, 2017 WL 5129008 (N.D. Ill. Nov. 6, 2017) ..................11

*Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc.*,
576 U.S. 519 (2015)........................................................................ *passim*

*Trimuel v. Chicago Hous. Auth.*,
No. 22 CV 03422, 2023 WL 6290485 (N.D. Ill. Sept. 27, 2023)...............11

*Uzuegbunam v. Preczewski*,
141 S.Ct. 792 (2021)...................................................................................7

*Village of Bellwood v. Dwivedi*,
895 F.2d 1521 (7th Cir. 1990) ..................................................................4, 5

*Woods v. Cole*,
181 Ill. 2d 512 (Ill. 1998)...........................................................................2

**Statutes**

Fair Housing Act, 42 U.S.C. § 3604(a)............................................... *passim*

Homelessness Prevention Act .....................................................................14

Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/2 ............ *passim*

Illinois Human Rights Act ..........................................................................14

**Other Authorities**

Amended Complaint, *County of Cook v. HSBC North America Holdings Inc.*,
No. 1:14-cv-2031 (N.D. Ill. 2015), 2014 WL 1677060...........................9

**Introduction**

Plaintiff Legal Aid Chicago's ("Legal Aid") Response to Defendant's Motion to Dismiss (Doc. 34) ("Response") is more remarkable for what it does not say than for what it does. Despite the detailed discussions in Defendant Hunter Properties, Inc.'s ("Hunter Properties") Memorandum in Support of Motion to Dismiss (Doc. 26) ("Mem.") of 2015 and 2017 Supreme Court precent regarding pleading requirements for disparate-impact claims under the Fair Housing Act ("FHA"), 42 U.S.C. § 3604(a), in its Response, Legal Aid does little more than cite these pivotal, controlling cases. Instead, Legal Aid urges the Court to apply standards from the 1970's and 80's and caselaw that conflicts with more recent Seventh Circuit authority. This Court should decline the invitation and hold that Legal Aid has not plausibly alleged proximate cause, subject-matter jurisdiction, or the elements of a disparate-impact claim under the FHA.

The Response's defense of Legal Aid's claim under the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA"), 815 ILCS 505/2, fairs no better. Legal Aid asserts an entirely novel ICFA claim unsupported by any authority and asks this Court to find that allegedly true statements can support an ICFA claim for unfair practice, without any misrepresentations, omissions, deceptive acts, or unfair competition. This Court should reject this novel theory because Legal Aid has not established organizational standing and the ICFA does not permit such a claim.

**Argument**

**I.      Legal Aid Does Not Allege Injuries Proximately Caused by Hunter Properties.**

As Hunter Properties acknowledges in its opening brief, the line between proximate cause and the requirements of Article III are difficult to delineate. (Mem. at 4-9.) Ninth Circuit caselaw applying *Bank of Am. Corp. v. City of Miami, Fla.*, 581 U.S. 189 (2017) ("*City of Miami*"), explains that "[p]roximate causation is not a requirement of Article III standing" but that proximate cause "'is an element of the cause of action' [citation] that must be established 'in every case.'" *City of*

*Oakland v. Wells Fargo & Co.*, 14 F.4th 1030, 1039, 1042 (9th Cir. 2021) (en banc). Proximate cause is also an element of an ICFA claim. *Anthony v. Country Life Mfg., LLC.*, 70 F. App'x 379, 382 (7th Cir. 2003). The first part of Hunter Properties' Section II applies to the proximate cause analysis. (Mem. at 4-6.) Rather than refuting Hunter Properties' argument that directness and substantiality are lacking, Legal Aid argues it is not required to establish that Hunter Properties is "the *predominate* proximate cause" of its alleged injuries. (Resp. at 8.) But this ignores Seventh Circuit precent and the standard articulated in *City of Miami*. (*See* Mem. at 4-5.)[1]

Legal Aid cites one case applying *City of Miami*, *County of Cook v. Wells Fargo*, decided by Judge Gary Feinerman. (Resp. at 9.) But earlier this year, the Seventh Circuit held the exact opposite in a case also filed by Cook County regarding the same alleged equity-stripping scheme. In *County of Cook v. Bank of America Corp.*, 78 F.4th 970 (7th Cir. 2023), the Seventh Circuit held Cook County was not within the first step of the causal chain. *Id.* at 972 ("Cook County seeks a remedy for effects that extend *way* beyond 'the first step.'"). The court reasoned that "a long causal chain poses administrative problems beyond a federal judge's skills" and favorably cited a Ninth Circuit case applying *City of Miami*'s proximate cause analysis. *Id.* at 973 (citing *Oakland*, 14 F.4th 1030). The Ninth Circuit reasoned that *City of Miami* rejected the foreseeability standard for an FHA claim and "instructed that the proper standard was the more stringent 'direct relation'

---

[1] Legal Aid cites multiple cases that are inapplicable to this analysis and do not discuss the Supreme Court's specific discussion of proximate cause under the FHA in *City of Miami*. First, Legal Aid cites a case holding that a "decisionmaker's exercise of judgment is *also* a proximate cause of an employment decision." *Staub v. Proctor Hosp.*, 562 U.S. 411, 420 (2011). Substantiality was not lacking in that case. Second, Legal Aid seems to argue this case should be viewed as a toxic tort pollution case but fails to sufficiently develop the argument, which is based on an analysis of traceability under Article III and does not consider *City of Miami*'s specific guidance regarding proximate cause under the FHA. *See Nat. Res. Def. Council v. Illinois Power Res., LLC*, 202 F. Supp. 3d 859, 872-73 (C.D. Ill. 2016). In particular, *City of Miami*'s directive that the FHA does not provide a remedy wherever the ripples of harm from a violation travel undercuts any analogy to pollution cases. *See City of Miami*, 581 U.S. at 202. Finally, Legal Aid suggests, without sufficiently developing the argument, that joint and several liability should apply, but there is no indication that the FHA supports joint and several liability. *See Woods v. Cole*, 181 Ill. 2d 512, 518-19 (Ill. 1998) (discussing joint and several liability); *see also In re Dealer Mgmt. Sys. Antitrust Litig.*, No. 18 C864, 2023 WL 4297644, at *10 (N.D. Ill. June 29, 2023) ("Whether joint and several liability is available for statutory violations, as opposed to common law torts, depends on the statute's specific wording.").

standard, which requires 'some direct relation between the injury asserted and the injurious conduct alleged.'" *Oakland*, 14 F.4th at 1035. The general tendency under this standard is not to go beyond the first step of the causal chain, but what "falls within that 'first step' depends in part on the 'nature of the statutory cause of action' and an assessment 'of what is administratively possible and convenient.'" *Id.* This Court should follow the Seventh and Ninth Circuits.

These cases instruct that the direct injury here is to prospective tenants allegedly denied housing by Hunter Properties and that any subsequent injury to Legal Aid is beyond the first step in the causal chain, which is too remote to state a claim. *Cf. id* at 1035-36 ("There is no question that Oakland's theory of harm goes beyond the first step—the harm to minority borrowers who receive predatory loans."). The Complaint alleges that the "FHA prohibits discrimination in rental housing on the basis of race and sex including by refusing to rent, refusing to negotiate for the renal of property, or otherwise denying a dwelling to a person because of race and sex." (Compl. at ¶ 77.) The first step is the discrimination and the harm from that conduct flows directly to those excluded from housing. Any subsequent harm to Legal Aid does not have a clear direct relation to conduct prohibited by the FHA, especially when, as here, that harm is even further removed, involves multiple steps, and separate actions carried out by separate parties (i.e., other landlords who filed the evictions and who apply similar policies). *See Oakland*, 14 F.4th at 1040 ("Oakland's 'theory of liability rests not just on separate actions, but separate actions carried out by separate *parties*,' in some cases third, fourth, or fifth parties."). Thus, Legal Aid fails to state a claim.

## II.     This Court Does Not Have Subject Matter Jurisdiction over Legal Aid's Claims.

The second part of Hunter Properties' Section II addresses organizational standing and raises facial and factual challenges to Article III subject-matter jurisdiction. (Mem. at 6-8.) Legal Aid's Response relies on caselaw from over 30 years ago, while failing to meaningfully distinguish Hunter Properties' cited cases. (Resp. at 5-7.) Legal Aid lacks Article III standing because it does

not plausibly allege that Hunter Properties' alleged "No-Evictions Policy" created new or additional burdens causing Legal Aid to divert its resources. *See Common Cause Indiana v. Lawson*, 937 F.3d 944, 955 (7th Cir. 2019) ("The question is what additional or new burdens are created by the law the organization is challenging."). Even if Legal Aid had sufficiently alleged an injury, the Declaration of Hilary Frey (Doc. 27) ("Frey Decl.")[2] conclusively negates any allegation or inference that Hunter Properties employed a "No-Evictions Policy." This undercuts any inference that the injury is traceable to Hunter Properties and renders a request for injunctive relief moot. Thus, the Complaint cannot survive the challenge to subject-matter jurisdiction.

### A. The Complaint Does Not Sufficiently Allege a Concrete Injury Fairly Traceable to Hunter Properties' Conduct to Support Constitutional Standing.

Legal Aid argues it alleged an injury in fact "because its time and resources have been deflected away from its tenant-advocacy and counselling activities." (Resp. at 6.) In support, Legal Aid cites *Village of Bellwood v. Dwivedi*, 895 F.2d 1521 (7th Cir. 1990), which applies *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982). In *Bellwood*, the agency "incurred costs by hiring testers as part of its investigation into the alleged discriminatory practices." *Campbell v. City of Berwyn*, 815 F. Supp. 1138, 1145 (N.D. Ill. 1993). The Seventh Circuit has since clarified that "ordinary expenditures as part of an organization's purpose do not constitute the necessary injury-in-fact required for standing." *Plotkin v. Ryan*, 239 F.3d 882, 886 (7th Cir. 2001); *see also Democratic Party of Wisconsin v. Vos*, 966 F.3d 581, 587 (7th Cir. 2020) ("But mobilizing voters who are discouraged or apathetic, but not actually impeded in their ability to achieve desired electoral outcomes, is 'baseline work' for a political party; it is an 'ordinary program cost[ ],' not an 'injury in fact.'"). In so doing, the Seventh Circuit affirmed a district court opinion that

---

[2] As explained in the opening brief, the Court may look beyond the allegations of the Complaint when a factual challenge to subject-matter jurisdiction is raised. (Mem. at 3.)

considered *Bellwood* and distinguished it on the basis that the hiring of testers to investigate alleged discriminatory practices was not part of the agency's primary purpose or goal. *Plotkin v. Ryan*, No. 99 C 53, 1999 WL 965718, at *5 (N.D. Ill. Sept. 29, 1999), *aff'd*, 239 F.3d 882 (7th Cir. 2001).

Earlier this year in a factually similar case, the Fifth Circuit applied *Havens Realty* and concluded that an advocacy organization did not have standing to assert disparate-impact claims against the operator of a rental housing complex based on a criminal background check policy. *Louisiana Fair Hous. Action Ctr., Inc. v. Azalea Garden Properties, L.L.C.*, 82 F.4th 345, 353-55 (5th Cir. 2023). This holding logically follows from the Seventh Circuit cases decided after *Bellwood*. The Fifth Circuit explained that "not every diversion of resources rises to an injury sufficient to confer standing" and that the organization's alleged injuries "seemingly fall squarely within its routine activities undertaken to fulfill its mission 'to eradicate housing discrimination in Louisiana.'" *Id.* at 351-52. The court further explained that the organization's investigation to "confirm Defendant's discriminatory rental practices" cannot supply an injury for standing because "expenses that are substantively related to future litigation do not suffice." *Id.* at 351-52.

Here, Legal Aid does not allege any injuries outside of its alleged mission of "maximizing low-income Cook County residents' access to safe, decent and affordable housing, including by preventing and reducing the impacts of evictions." (Compl. ¶ 65.) As explained in the opening brief, Legal Aid's alleged injuries do not directly flow from Hunter Properties' challenged conduct because the Complaint alleges that many landlords in Chicago employ a "No-Evictions Policy" and does not allege that Hunter Properties is responsible for the disparate impact of eviction filings. (Mem. at 5-7.) But even if Legal Aid's alleged injuries were fairly traceable to Hunter Properties, the Complaint still does not allege an injury-in-fact based on diversion of resources. While Legal Aid references "fair housing testing" and "applicant interviews" in the Response, the Complaint

does not allege that Legal Aid hired any testers or interviewed any applicants with respect to Hunter Properties. (Resp. at 4.) Regardless, amending the Complaint would be futile because Legal Aid alleges it operates a Fair Housing Investigation and Enforcement Project and its "advocacy work for tenants' rights span decades." (Compl. at ¶¶ 48-64.) Therefore, like the agency in *Azalea Garden Properties*, Legal Aid's alleged activities are insufficient to support organizational standing because they are part of Legal Aid's baseline work and ordinary program costs.

### B. The Factual Record Establishes that Subject-Matter Jurisdiction Is Lacking.

Legal Aid fails to meet its burden of proof in response to Hunter Properties' factual challenge to subject-matter jurisdiction by declining to produce any rebuttal evidence. *See Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 445 (7th Cir. 2009) (holding that "district court correctly concluded that Apex had failed to meet its burden of proof" of coming forward with competent proof that standing exists when it failed to produce any rebuttal evidence).

The Frey Decl. and other factual information may properly be considered in connection with determining whether subject-matter jurisdiction over Legal Aid's claims exists. "Limits on subject-matter jurisdiction are not waivable or forfeitable." *Daley v. Jones Motor Co., Inc.*, 743 F. App'x 35, 37 (7th Cir. 2018) ("[O]nce we see evidence that we lack jurisdiction, we cannot simply ignore that evidence."). The Response misleadingly quotes the contents of the Frey Decl. (Resp. at 9-10), which explains that Hunter Properties did not employ a "No-Evictions Policy" as alleged in the Complaint. (Frey Decl. at ¶¶ 4-5.) This evidence negates any inference that Legal Aid's alleged injuries are fairly traceable to Hunter Properties.[3]

---

[3] Legal Aid argues the opposite based on a calculation of Hunter Properties' supposed share of the affordable housing rental market in Chicago that lacks foundation. (Resp. at 7.) Legal Aid's calculation assumes that all of Hunter Properties' apartments are affordable rental homes monitored by the Chicago Department of Housing. (*See* Mem. at 8.) This assumption is not alleged in the Complaint and lacks foundation. Based on the record before the Court, it is impossible to determine the percentage of the affordable housing rental market controlled by Hunter Properties.

C.    **Legal Aid's Injuries Are Not Redressable by a Favorable Decision in this Case.**

Legal Aid argues redressability based on *Uzuegbunam v. Preczewski,* 141 S.Ct. 792 (2021), which holds that "a request for nominal damages satisfies the redressability element of standing where a plaintiff's claim is based on a completed violation of a legal right." *Id.* at 802. Legal Aid, though, does not allege a completed violation of a legal right but seeks a permanent injunction prohibiting the alleged violation. (Compl. at 24.) The injunctive relief Legal Aid seeks against Hunter Properties will not plausibly cause Legal Aid to change any of its activities at all. Moreover, the Frey Decl. establishes that Hunter Properties does not employ a "No-Evictions Policy," and therefore, Legal Aid's request for injunctive relief is moot and cannot support the redressability element. *See Brumit v. City of Granite City*, 72 F.4th 735, 738 (7th Cir. 2023) (vacating judgment and instructing district court to dismiss case for lack of justiciable controversy after determining that request for injunctive relief was moot and plaintiff was not entitled to damages).

III.    **The Complaint does Not Plausibly Allege a Disparate-Impact Claim under *Inclusive Communities*.**

Despite the Supreme Court's recognition of disparate-impact claims in *Texas Department of Housing and Community Affairs v. Inclusive Communities Project, Inc.*, 576 U.S. 519 (2015) ("*Inclusive Communities*"), Legal Aid does not discuss the application of *Inclusive Communities* beyond simply citing it. (Resp. at 11, 15.) The reason is obvious. The Complaint does not satisfy the pleading standard articulated in *Inclusive Communities*. This Court should decline Legal Aid's invitation to apply caselaw predating *Inclusive Communities* and, instead, follow recent caselaw discussing any applying *Inclusive Communities* at the pleading stage. Under the appropriate standard, the Complaint fails to plausibly allege the elements of a claim under the FHA.

A.    **Legal Aid's Allegations Regarding a "Blanket No-Evictions Policy" Are Not Supported by Sufficient Factual Allegations.**

Legal Aid's disparate-impact claim premised on Hunter Properties' alleged imposition of

7

a "Blanket No-Evictions Policy" is too speculative and conclusory to survive a motion to dismiss. Even when heightened fact pleading is not required, a plaintiff is still required to allege enough to "nudge[] their claims across the line from conceivable to plausible." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Legal Aid argues that it does not matter "that other landlords also have the same policy." (Resp. at 11.) But that misses the point. Legal Aid has not alleged sufficient facts regarding Hunter Properties' specific challenged policy. Legal Aid simply alleges that "Hunter's online housing application requires prospective tenants to answer 'yes' or 'no' to the question, 'Have you ever been evicted?,'" that this "policy is stated in the Terms and Conditions on Hunter's online application: 'Prior evictions filings will result in denial,'" and that Hunter Properties requires potential tenants to submit to background checks. (Compl. at ¶¶ 14, 25-26.) Based only on these facts, Legal Aid infers that Hunter Properties "applies a No-Evictions Policy to categorically exclude would-be tenants who have any history of an eviction case against them." (*Id.* at ¶ 27.)

Legal Aid, however, wholly fails to allege any facts regarding Hunter Properties actual decision-making process or the outcomes of Hunter Properties' application process. The Complaint does not allege Legal Aid sent testers to complete applications, that anyone called Hunter Properties to inquire regarding how the policy works, that anyone went to a building to speak with leasing agents regarding the policy, or that Hunter Properties rejected any actual applicants because of a prior eviction filing. In other words, the Complaint does not indicate that Legal Aid engaged in any pre-litigation investigation beyond looking at Hunter Properties' website. Legal Aid's theory that Hunter Properties imposes a "Blanket No-Evictions Policy" is based solely on a question in the rental application and a statement in the online application Terms and Conditions. This theory is too speculative and hypothetical to state a plausible claim for relief.

Legal Aid's reliance on *County of Cook v. HSBC North America Holdings Inc.*, 136 F.Supp.3d 952 (N.D. Ill. 2015), which was decided under an old pleading standard from before *Inclusive Communities*, further demonstrates how Legal Aid's Complaint is deficient. Cook County's amended complaint in that case is over 100 pages long and contains detailed factual allegations regarding the defendants' marketing targeted to minorities and discretionary pricing policies. *Id.* at 957. The amended complaint alleges specific facts regarding how defendants used a computer system to set rates, fees, and terms on high cost, subprime, and ALT-A loans at the corporate level, distributed those rate sheets to employees, branch managers, and a network of broker's and correspondent lenders, and expressly encouraged additional discretionary charges. After reviewing information provided by loan applicants, as wells as traditional objective risk-related credit variables, defendants allegedly derived a risk-based financing rate, while simultaneously encouraging and authorizing, through the rate sheets and other communications, "loan officers and branch managers to charge yield spread premiums and other discretionary fees and costs that were not based on any particular or appropriate credit risk factor" on mortgage loans offered to FHA protected minority borrowers. Amended Complaint at ¶¶ 100-05, *County of Cook v. HSBC North America Holdings Inc.*, No. 1:14-cv-2031 (N.D. Ill. 2015), 2014 WL 1677060. Legal Aid's 25-page Complaint does not come anywhere close to alleging this level of detailed facts demonstrating the specific challenged policy and falls well short of what is required.

**B.** **Legal Aid's Alleged Statistical Disparity Does Not Show a Disparate Impact Caused by Hunter Properties.**

Legal Aid argues that statistics regarding renters in Cook County are sufficient to "show that Hunter's No-Evictions Policy has a significant disparate impact." (Resp. at 11.) But Legal Aid confuses cause and effect and relies on cases decided before the 1988 amendments to the FHA, which recognized disparate-impact claims, and caselaw called into doubt following *Inclusive*

*Communities. See, e.g., Inclusive Communities*, 576 U.S. at 521; *Ellis v. City of Minneapolis*, 860 F.3d 1106, 1111 n.2 (8th Cir. 2017) ("The Supreme Court's decision casts significant doubt on *Gallagher* [*v. Magner*, 619 F.3d 823 (8th Cir. 2010)]. Thus, at least to the extent it is inconsistent with *Inclusive Communities* and the present opinion, *Gallagher* is no longer binding precedent.").

Legal Aid's own cited cases rely on statistics regarding the effect of the challenged policies, rather than attempting to draw an inference based on the available applicant pool, as Legal Aid asks this Court to do. *See Metro. Hous. Dev. Corp. v. Vill. of Arlington Heights*, 558 F.2d 1283, 1286 (7th Cir. 1977) (discussing statistics showing the effect of the Village's challenged decision); *Huskey v. State Farm Fire & Cas. Co.*, No. 22 C 7014, 2023 WL 5848164, at *2 (N.D. Ill. Sept. 11, 2023) (discussing statistical disparities in "(1) State Farm's claims-processing times, (2) the paperwork it required, and (3) the number of interactions between policyholders and State Farm employees"); *Betsey v. Turtle Creek Assocs.*, 736 F.2d 983, 988 (4th Cir. 1984) (discussing statistical impact of defendant's challenged policy).

Legal Aid has also not sufficiently alleged any methodology for Hunter Properties to challenge, and therefore, the cases regarding "methodological challenges" are inapposite. (Resp. at 13.) The Complaint merely alleges disparities in the population of Cook County renters served with evictions (Compl. at ¶¶ 34-38), and Legal Aid wholly fails to explain how these numbers show any impact of an alleged "No-Evictions Policy." (Resp. at 14.) What Legal Aid really asks the Court to do is to infer an impact, but doing so is far too speculative based on the allegations. Thus, Legal Aid's alleged statistical disparity does not support a claim against Hunter Properties.

### C. The Complaint Fails to Allege Robust Causation as Required by *Inclusive Communities*.

Legal Aid argues that it sufficiently alleged a causal connection as required by *Inclusive Communities* (Resp. at 15) without citing any authority interpreting and applying the Supreme

Court's "robust causality requirement" at the pleading stage.[4] *See Inclusive Communities*, 576 U.S. at 542-43; *Trimuel v. Chicago Hous. Auth.*, No. 22 CV 03422, 2023 WL 6290485, at *7 (N.D. Ill. Sept. 27, 2023) ("The FHA requires a more robust causal connection at the motion to dismiss stage."). While the Seventh Circuit has not yet provided guidance regarding the meaning or requirements of the robust causation element established in *Inclusive Communities*, several other circuits have considered this requirement, and the Fifth Circuit's well-reasoned decision in *Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890 (5th Cir. 2019), is particularity instructive. *Id.* at 904 (describing four different views among the Fourth, Eighth, and Eleventh Circuits and holding that plaintiff failed "to allege facts sufficient to provide the robust causation necessary for an actionable disparate impact claim" under any of those views).

In *Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, the Fifth Circuit considered whether plaintiff could state a disparate-impact claim based on defendants' alleged "blanket 'no vouchers' policy." *Id.* at 907. Plaintiff alleged that defendants' "refusal to negotiate with or rent to voucher holders disparately impact[ed] black households." *Id.* at 897. Plaintiff cited statistics relating to the racial makeup of voucher households and of defendants' apartment complexes in support of its claim. *Id.* In determining that these allegations did not support the robust causation requirement of *Inclusive Communities*, the Fifth Circuit reasoned that "geographical happenstance cannot give rise to liability against an entity not responsible for the geographical distribution." *Id.* at 906. Plaintiff's allegations did not support an inference that the challenged policy "caused black persons to be the dominant group of voucher holders in the Dallas metro area." *Id.* at 907.

---

[4] Legal Aid does not explain its reliance on *County of Cook v. HSBC North America Holdings Inc.*, which decided a motion to dismiss filed before *Inclusive Communities* was decided and merely acknowledges *Inclusive Communities.* The opinion does not discuss causation and applies an old pleading standard from a 1977 Seventh Circuit case. *See HSBC North America Holdings Inc.*, 136 F.Supp.3d at 966. The cases Hunter Properties cites in its opening brief, on the other hand, discuss and apply the pleading standard from *Inclusive Communities*. *See Trimuel*, 2023 WL 6290485, at *7; *TBS Grp., LLC v. City of Zion, Illinois*, No. 16-CV-5855, 2017 WL 5129008, at *9 (N.D. Ill. Nov. 6, 2017).

Here, the Complaint does not satisfy even a moderate interpretation of robust causation. Unlike in *Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, Legal Aid does not allege any statistics relating to the outcome of Hunter Properties' tenant screening process or the racial makeup of its apartment complexes. Legal Aid also does not allege that Hunter Properties' policy categorically excludes black women or that black women with a connection to prior evictions have been denied housing while white men with a connection to prior evictions have been allowed to rent. In effect, Legal Aid asks the Court to view a "No-Evictions" policy as synonymous with a no-black-women-tenants policy. Legal Aid does not allege that Hunter Properties is responsible for the racial makeup of Cook County residents with a connection to prior evictions, and it is entirely speculative whether the alleged "No-Evictions" policy caused an actual disparate impact. More is needed at the pleading stage to satisfy the safeguards of *Inclusive Communities* and ensure "prompt resolution" of disparate-impact cases. *See Inclusive Communities,* 576 U.S. at 521.

## IV. This Court Should Reject Legal Aid's Novel ICFA Theory.

Legal Aid's argument that it has sufficiently pled the elements of an ICFA claim is contradictory and does not make sense. Legal Aid attempts to plead a violation of the ICFA for an unfair practice, without any misrepresentations, omissions, deceptive acts, or unfair competition. The ICFA is not intended to apply to unfair business practices that are not also deceptive. *See Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002) ("The Consumer Fraud Act is a regulatory and remedial statute intended to protect consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices."). Legal Aid does not cite any authority indicating its claim is actionable under the ICFA, and it simply does not make sense that it could be because the Complaint alleges Hunter Properties' conduct *deterred* prospective tenants from applying at all. (Compl. at ¶ 86.) This is the opposite of unfair competition. Legal Aid's novel ICFA claim fails for the additional reasons stated below.

12

### A.      Legal Aid Does Not Have Standing to Assert an ICFA Claim on Its Behalf.

Legal Aid's argument that it has standing under the consumer nexus test is novel and unsupported. (Resp. at 16-18.) "The consumer nexus test is difficult to satisfy, as 'Illinois courts are skeptical of business-v.-business ICFA claims when neither party is actually a consumer in the transaction.'" *Onvi, Inc. v. Radius Project Dev., Inc.*, No. 19 C 3201, 2020 WL 4607242, at *4 (N.D. Ill. Aug. 11, 2020) (quoting *Cmty. Bank of Trenton v. Schnuck Markets, Inc.*, 887 F.3d 803, 823 (7th Cir. 2018)). Legal Aid does not satisfy this high bar.

First, Legal Aid is not akin to a consumer because it is not a potential consumer of residential rental services. *See Patel v. Zillow, Inc.*, No. 17 C 4008, 2018 WL 2096453, at *9 (N.D. Ill. May 7, 2018) (holding plaintiffs "failed to plausibly allege that their actions were akin to consumers' actions because Plaintiffs are selling real estate, and thus are not the potential buyers"). Legal Aid does not provide any authority holding that an advocacy organization is akin to a consumer but, instead, cites a case holding that "legal representatives such as estates" have standing on behalf of consumers. *See Breeze v. Bayco Prod. Inc.*, 475 F. Supp. 3d 899, 907 (S.D. Ill. 2020). Legal Aid does not claim to be a legal representative of any potential consumer.

Second, the statements on Hunter Properties' website do not sufficiently affect the market or involve consumer protection concerns because the Complaint alleges the statements were true, not that they confused or deceived consumers. (Compl. at ¶ 25.) *See MacNeil Auto. Prod., Ltd. v. Cannon Auto. Ltd.*, 715 F. Supp. 2d 786, 793 (N.D. Ill. 2010) (noting "courts have found that conduct that would confuse or deceive consumers implicates consumer protection concerns"). Legal Aid does not cite any authority permitting an ICFA claim to proceed based on statements that were neither misleading nor deceptive.

Finally, Legal Aid seeks damages on its own behalf, which does not serve the interests of consumers. (Compl. at 24.) *See Patel*, 2018 WL 2096453, at *9.

**B.      Legal Aid Does Not Plausibly Plead the Elements of an ICFA Claim.**

Legal Aid argues it pled the first element of an ICFA claim by alleging that "Hunter's No-Evictions Policy offends public policy because it undermines state and federal statutes designed to protect consumers of residential housing." (Resp. at 18.) While a plaintiff need not establish all three criteria of an unfair practice, the Court must consider the degree to which the practice meets one or more criteria. *See Robinson*, 775 N.E.2d at 961. Legal Aid only argues the public policy criteria and thereby concedes that the other two criteria do not apply. Thus, the alleged practice must be particularly offensive to public policy. *See Batson v. Live Nation Ent., Inc.*, No. 11 C 1226, 2013 WL 992641, at *6 (N.D. Ill. Mar. 13, 2013) (dismissing ICFA unfairness claim because "[e]ven if the claim somehow satisfied one of the [three *Robinson*] factors, it would not do so to the degree necessary to state a viable ICFA claim"). Legal Aid's allegations that Hunter Properties undermines the purpose behind certain statutes does not allege an offense of public policy to a sufficient enough degree. Legal Aid points to a law allowing eviction records to be sealed, the Homelessness Prevention Act, the FHA, and the Illinois Human Rights Act. (Compl. at ¶¶ 82-84.) With the exception of the FHA, which Legal Aid has not sufficiently alleged a violation of for the reasons explained above, Hunter Properties is not alleged have violated any of these statutes, nor could it be. The Complaint, therefore, does not plausibly allege the first element of an ICFA claim. *See Loop Spine & Sports Ctr., Ltd. v. Am. Coll. of Med. Quality, Inc.*, No. 22 CV 04198, 2023 WL 3585835, at *3 (N.D. Ill. May 22, 2023) (collecting cases and dismissing ICFA claim because, although plaintiff alleged conduct that violated public policy, "the other two factors, without more, weigh against a finding of unfairness").

Second, Legal Aid argues that Hunter Properties intended reliance on this practice because it "stated its No-Evictions Policy directly on its website and featured it prominently in its housing application, thereby deterring applicants." (Resp. at 19.) But the Complaint alleges these

14

statements are true. (Compl. at ¶ 25.) Legal Aid does not cite any authority holding that an allegedly accurate statement deterring consumers from engaging in a transaction is actionable under the ICFA. *See Abramov v. Home Depot, Inc.*, No. 17-CV-1860, 2018 WL 1252105, at *3 (N.D. Ill. Mar. 12, 2018) ("The few cases which have found a true statement to be actionable under ICFA have all involved a facially obvious omission or deception as to a material fact."). Permitting such a claim to proceed would stretch the ICFA beyond the text of the statute. *See* 815 ILCS 505/2 (stating second element as "with intent that others rely upon the concealment, suppression or omission of such material fact"). These alleged statements are not actionable under the ICFA.

Finally, Legal Aid fails to allege proximate cause for the reasons stated in Section I, *supra*, but even if an ICFA claim has a more relaxed standard than the standard stated in *City of Miami*, Legal Aid still does not establish proximate cause. Under the ICFA, "[a] defendant's conduct is a 'cause in fact' of the plaintiff's injury only if that conduct is a material element and a substantial factor in bringing about the injury. A defendant's conduct is a material element and substantial factor in bringing about the injury if, absent that conduct, the injury would not have occurred." *Abrams v. City of Chicago*, 811 N.E.2d 670, 675 (Ill. 2004) (citation omitted). The Complaint does not plausibly allege any injury that would not have occurred absent Hunter Properties' challenged conduct because it alleges that other landlords apply similar policies. (Compl. at ¶ 1 & n.1.) Legal Aid's allegations are more akin to a "market theory of causation," which Illinois courts have rejected. *See Cmty. Bank of Trenton*, 887 F.3d at 823-24 (discussing market theory of causation). Thus, Legal Aid's ICFA claim fails to state a claim upon which relief can be granted.

## Conclusion

For the foregoing reasons, Hunter Properties respectfully requests that the Court dismiss Legal Aid's Complaint, with prejudice.

Dated: December 21, 2023          Respectfully submitted,

*/s/ Maria A. Boelen*

John S. Letchinger
Maria A. Boelen
Katharine H. Walton
**BAKER & HOSTETLER LLP**
One North Wacker Drive, Suite 4500
Chicago, IL 60606
Telephone: 312.416.6200
Facsimile: 312.416.6201
jletchinger@bakerlaw.com
mboelen@bakerlaw.com
kwalton@bakerlaw.com

*Attorneys for Defendant Hunter Properties, Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this date, December 21, 2023, a true and correct copy of the

foregoing document was electronically filed with the Clerk of Court using the CM/ECF system,

which will automatically send email notification of such filing to all attorneys of record.

*/s/ Maria A. Boelen*