# EXHIBIT A

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ERICKA M. BYRD, KEMONE BROOKS,
QUANTEZ MOORE and EARNESTINE
LAWSON,

     Plaintiffs,

v.              Case No.: 3:23-cv-266-WWB-JBT

JWB PROPERTY MANAGEMENT,
LLC. and JWB REAL ESTATE
CAPITAL, LLC,

     Defendants.
              /

## ORDER

THIS CAUSE is before the Court on Defendants' Motion to Dismiss (Doc. 28) and Plaintiffs' Response (Doc. 33). For the reasons set forth below, Defendant's Motion will be denied.

**I. BACKGROUND**

Defendant JWB Property Management, LLC ("**Management**") rents and manages homes in Duval County, Florida. (Doc. 20, ¶ 1). Defendant JWB Real Estate Capital, LLC ("**Capital**") owns rental properties in Duval County, leases homes owned or managed by Defendants, and hires tenant screening companies to provide screening services of prospective residents. (*Id.* ¶ 2). A significant number of the properties that Defendants own, rent, and manage are located in census tracts with a Black population greater than the average of Black residents in Duval County generally. (*Id.* ¶¶ 109, 112–115, 118). Plaintiffs are Black residents of Duval County that have applied for and been denied

housing by Defendants based, in part, on erroneously filed eviction proceedings or proceedings against similarly named individuals. (*Id.* ¶¶ 26–33, 72).

Plaintiffs allege that Defendants' website states that they have a policy of disqualifying all applicants that "have any felony convictions or eviction filings" on their record in the preceding five years and that Management's office asks the same question if contact by telephone to apply for housing. (*Id.* ¶¶ 44, 46, 50). Persons that disclose an eviction filing are told they do not qualify to rent and are not permitted to schedule a tour of a property. (*Id.* ¶ 52). Plaintiffs also allege that Defendants employ companies to conduct screenings on potential applicants that include records of eviction filings but fail to include the disposition of the eviction filing. (*Id.* ¶ 64). Management has a "Second Chance Program," that takes the circumstances of individual applicants into consideration, but Plaintiffs allege they submitted supporting or supplemental information regarding the eviction filings in their reports and Management maintained the denials. (*Id.* ¶¶ 71–72, 77–78, 83–84, 104–106).

Plaintiffs allege that the filing of an eviction proceeding alone does not reflect on the desirability of a potential tenant. (*Id.* ¶ 88). Plaintiffs also allege that Black Americans, despite making up a relatively small percentage of the renting population, are more likely to be threatened with eviction or subject to an eviction filing than White Americans. (*Id.* ¶¶ 121–123). As a result, Plaintiffs allege that Defendants' policy or practice of denying applicants that have been the subject of an eviction filing has a disproportionately adverse impact on Black applicants and prospective applicants in violation of the Fair Housing Act ("**FHA**"), 42 U.S.C. § 3604 *et seq.* (*Id.* ¶¶ 140–148).

## II. LEGAL STANDARD

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." In determining whether to dismiss under Rule 12(b)(6), a court accepts the factual allegations in the complaint as true and construes them in a light most favorable to the non-moving party. *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1269 (11th Cir. 2009). Nonetheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Furthermore, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## III. DISCUSSION

The First Amended Class Action Complaint ("**Amended Complaint**," Doc. 20) alleges a single claim for violations of § 3604(a) and (b) of the FHA, which prohibit the outright refusal to sell or rent a dwelling and discrimination in the terms, conditions, or privileges of the sale or rental of a dwelling on the basis of race, color, religion, sex, familial status, or national origin. 42 U.S.C. § 3604(a)–(b). Under the FHA, a defendant

can be held liable for either disparate treatment—i.e., discriminatory intent—or disparate impact—i.e., discriminatory effect. *See Palm Partners, LLC v. Oakland Park*, 102 F. Supp. 3d 1334, 1342 (S.D. Fla. 2015). Here, Plaintiffs only assert a claim for disparate impact.

To state a claim for disparate impact under the FHA, a plaintiff must allege: (1) a "statistically-imbalanced" practice that adversely impacts a minority group; (2) identify a facially-neutral policy followed by the defendant; (3) that the policy is "artificial, arbitrary, and unnecessary"; and (4) facts "that meet the 'robust causality requirement' linking the challenged neutral policy to a specific adverse racial or ethnic disparity." *City of Mia. v. Bank of Am. Corp.*, 171 F. Supp. 3d 1314, 1320 (S.D. Fla. 2016) (quoting *Tex. Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519, 542–43 (2015)). "A plaintiff who fails to allege facts at the pleading stage or produce statistical evidence demonstrating a causal connection cannot make out a prima facie case of disparate impact." *Inclusive Cmtys.*, 576 U.S. at 543. Thus, to survive the pleading stage, the plaintiff must allege facts showing more than "that a policy impacted more members of a protected class than non-members of protected classes." *Oviedo Town Ctr. II, L.L.L.P. v. City of Oviedo*, 759 F. App'x 828, 834 (11th Cir. 2018).

In their Motion, Defendants do not argue that Plaintiffs have failed to allege a facially neutral policy. Plaintiffs have sufficiently alleged the existence of a facially-neutral policy—i.e., the policy to deny tenancy to any individual that has been the subject of an eviction filing in the preceding four or five years. Defendants also do not argue that Plaintiffs have failed to allege non-conclusory facts showing that the policy is artificial, arbitrary, and unnecessary. Finally, although Defendants take issue with the reliability of

4

the statistics relied on by Plaintiffs, Defendants do not dispute that Plaintiffs have alleged that the policy is statistically more likely to impact Black applicants and potential applicants if the statistics are accurate.

Instead, Defendants argue that Plaintiffs have failed to meet their pleading requirements of alleging either a discriminatory effect or a robust causal connection between Defendants' policy and any discriminatory effect in Duval County. "A showing of significant discriminatory effect suffices to demonstrate a prima facie violation of the Fair Housing Act. A plaintiff can demonstrate a discriminatory effect in two ways: it can demonstrate that the decision has a segregative effect or that it makes housing options significantly more restrictive for members of a protected group than for persons outside that group." *Belcher v. Grand Rsrv. MGM, LLC*, 269 F. Supp. 3d 1219, 1241 (M.D. Ala. 2017) (quotation omitted). Although the Supreme Court did not clearly delineate the meaning or requirements of "robust causation" in *Inclusive Communities*, the Eleventh Circuit, in an unpublished opinion, described it as a "detailed causation requirement[]" intended to "cabin[] disparate-impact liability" and to avoid unwarranted burdens on cities and developers leading to the use of "numerical quotas." *Oviedo Town Ctr.*, 759 F. App'x at 833–34 (quotation omitted). Thus, at the very least, a disparate impact claim cannot "be founded on nothing more than a showing that a policy impacted more members of a protected class than non-members of protected classes." *Id.* at 834.

In this case, Plaintiffs argue that Black renters are statistically more likely than their White counterparts to have had an eviction filing made against them. Therefore, Plaintiffs argue, the categorical exclusion of persons with a history of eviction filings will deter and eliminate more Black housing applicants than White housing applicants. In support of

5

this argument, Plaintiffs allege that Blacks account for roughly 30.9 percent of the population of Duval County and Black renters in the United States account for 51.1 percent of renters threatened with eviction, despite making up only 18.6 percent of the renting population. (Doc. 20, ¶¶ 109, 121). Additionally, Plaintiffs allege that a random sampling of eviction filings in Duval County in 2022 demonstrated that seventy-one percent of defendants were Black in cases "where race was either volunteered or could be imputed." (*Id.* ¶ 122). Finally, Plaintiffs allege that in the last six months of 2022, a roughly equal number of evictions were filed against renters in predominately Black census tracts in Duval County as those filed in White census tracts. (*Id.* ¶ 123).

Taking Plaintiffs' statistical allegations as true, which the Court must do at this stage of the proceedings, Plaintiffs have sufficiently alleged that Defendants' application of the eviction filing policy is likely to disproportionately foreclose rental opportunities for Black applicants in Duval County as compared to their White counterparts. *See Arnold v. Elmington Prop. Mgmt. LLC*, No. 2:22-cv-00254, 2022 WL 2812260, at *4 (N.D. Ala. July 18, 2022); *Pickett v. City of Cleveland*, No. 1:19 CV 2911, 2020 WL 11627247, at *5–6 (N.D. Ohio Sept. 29, 2020); *Cobb Cnty. v. Bank of Am. Corp.*, No. 1:15-CV-04081, 2020 WL 13200158, at *8 (N.D. Ga. Sept. 18, 2020); *Horne v. Harbour Portfolio VI, LP*, 304 F. Supp. 3d 1332, 1340–41 (N.D. Ga. 2018). Defendants' arguments to the contrary are unavailing. As an initial matter, Defendants' emphasis on the need to prove the policy makes housing options significantly more restrictive places the cart before the horse. Here, Plaintiffs have alleged that Defendants provide numerous properties for rent in the relevant markets and that the policy limits the availability of those options for a disproportionately high number of Black renters. The Court disagrees that these

6

allegations are vague or conclusory. Although Plaintiffs have not provided specific numbers of persons that have been deterred or denied, the factual allegations raise a plausible inference that the number is sufficiently significant for pleading purposes. Thus, Plaintiffs have alleged that the policy affects more than a few people and have raised a sufficient inference of causation at this juncture of the proceedings. *See Schaw v. Habitat for Human. of Citrus Cnty., Inc.*, 938 F.3d 1259, 1274 (11th Cir. 2019) ("[I]t's not enough to show that a few people are affected by a policy—rather, the disparity must be substantial enough to raise an inference of causation.").

Turning to Defendants' arguments regarding robust causality, Defendants argue that any imbalance could not have been caused by the policy because they provide housing in areas with higher than average Black populations. Plaintiffs' allegations draw a causal connection between Defendants' policy and the foreclosing of a significant number of housing options for Black renters. Plaintiffs have alleged statistical evidence that Black applicants are more likely than White applicants to have experienced an eviction filing in the past four to five years, categorically excluding them from consideration for Defendants' rental properties. This would in turn result in the relevant reduction in housing opportunities for Black renters in Duval County, which would be directly linked to the policy, i.e., caused by Defendants. Thus, contrary to Defendants' arguments, Plaintiffs have alleged relevant comparative evidence regarding the impact of the policy and a logical connection between the policy and a reduction in opportunities for Black renters. To the extent Defendants argue that Plaintiffs must also allege and establish that Defendants rent to more non-Black tenants, Defendants have not provided any legal authority in support of the proposition that this is the only way in which Plaintiffs

7

could succeed on their claim and, even if that was necessary, what Plaintiffs must ultimately prove is not the standard on a motion to dismiss. The Court is satisfied, at this juncture, that Plaintiffs have alleged sufficient factual information to proceed on their FHA disparate impact claim.

IV.  **CONCLUSION**

Therefore, it is **ORDERED** and **ADJUDGED** that Defendants' Motion to Dismiss (Doc. 28) is **DENIED**.

**DONE AND ORDERED** in Jacksonville, Florida on June 3, 2024.

WENDY W. BERGER
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record