**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LEGAL AID CHICAGO, | ) | |
| | ) | Case No. 1:23-cv-4809 |
| Plaintiff, | ) | |
| | ) | Honorable Steven C. Seeger |
| v. | ) | |
| | ) | |
| HUNTER PROPERTIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF**
**DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

John S. Letchinger
Maria A. Boelen
Katharine H. Walton
**BAKER & HOSTETLER LLP**
One North Wacker Drive, Suite 3700
Chicago, IL 60606
Telephone: 312.416.6200
Facsimile: 312.416.6201
jletchinger@bakerlaw.com
mboelen@bakerlaw.com
kwalton@bakerlaw.com

*Attorneys for Defendant Hunter Properties, Inc.*

## **Table of Contents**

Introduction and Background ........................................................................................... 1

Argument ......................................................................................................................... 2

      I.      Plaintiff Cannot Establish Subject Matter Jurisdiction. .......................... 2

            A.      Plaintiff Fails to Sufficiently Allege any Injury in Fact. ............................ 2

            B.      Causation Is Lacking ................................................................................... 4

            C.      Redressability Is Lacking ............................................................................ 5

      II.      The FAC Fails to State Any Claim Upon Which Relief Can be Granted ............... 5

            A.      Plaintiff Cannot Establish Proximate Cause. ............................................. 6

            B.      Counts I and II Insufficiently Allege a Plausible Disparate-Impact
Claim .......................................................................................................... 9

            C.      Count III Fails to Allege a Viable Claim for Violation of the ICFA. ....... 12

                  1.      Plaintiff Lacks Statutory Standing under the ICFA. ..................... 13

                  2.      The FAC Also Fails to Plead a Cognizable ICFA Claim. ............ 14

Conclusion ..................................................................................................................... 15

<u>Table of Authorities</u>

**Page(s)**

**Cases**

*Anthony v. Country Life Mfg., LLC.*,
    70 F. App'x 379 (7th Cir. 2003) ..................................................................6, 14, 15

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..............................................................................................5

*Bank of Am. Corp. v. City of Miami, Fla.*,
    581 U.S. 189 (2017) ...........................................................................................6, 7

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ..............................................................................................6

*Bell v. Pappas*,
    No. 22 C 7061, 2024 WL 1702691 (N.D. Ill. Apr. 19, 2024)...........................9, 12

*Bonilla v. Ancestry.com Operations Inc.*,
    574 F. Supp. 3d 582 (N.D. Ill. 2021) ....................................................................13

*CHS Acquisition Corp. v. Watson Coatings, Inc.*,
    No. 17-CV-4993, 2018 WL 3970137 (N.D. Ill. Aug. 20, 2018) .............................13

*Cnty. of Cook, Illinois v. Wells Fargo & Co.*,
    314 F. Supp. 3d 975 (N.D. Ill. 2018) ......................................................................7

*Cnty. of Cook v. Bank of Am. Corp.*,
    No. 14 C 2280, 2018 WL 1561725 (N.D. Ill. Mar. 30, 2018) ..................................7

*County of Cook v. Bank of America Corp.*,
    78 F.4th 970 (7th Cir. 2023) ...................................................................................7

*Disability Rts. Wis., Inc. v. Walworth Cnty. Bd. of Supervisors*,
    522 F.3d 796 (7th Cir. 2008) ..................................................................................3

*F.D.A. v. All. for Hippocratic Med.*,
    602 U.S. 367 (2024).............................................................................................4, 5

*Garrett v. RentGrow, Inc.*,
    No. 04 C 8309, 2005 WL 1563162 (N.D. Ill. July 1, 2005) .............................14, 15

*Huskey v. State Farm Fire & Cas. Co.*,
    No. 22 C 7014, 2023 WL 5848164 (N.D. Ill. Sept. 11, 2023) .................................9

*Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*,
  920 F.3d 890 (5th Cir. 2019) ....................................................................10, 11, 12

*Kemper v. Deutsche Bank AG*,
  911 F.3d 383 (7th Cir. 2018) ..................................................................................6

*Kim v. Carter's Inc.*,
  598 F.3d 362 (7th Cir. 2010) ................................................................................14

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ................................................................................................2

*MacNeil Auto. Prod., Ltd. v. Cannon Auto. Ltd.*,
  715 F. Supp. 2d 786 (N.D. Ill. 2010) ...................................................................13

*Maxwell v. Sanofi-Aventis U.S. LLC*,
  No. 15-CV-10095, 2016 WL 3633321 (N.D. Ill. July 6, 2016)............................15

*Oakland v. Wells Fargo & Co.*,
  14 F.4th 1030 (9th Cir. 2021) ............................................................................7, 8

*Patel v. Zillow, Inc.*,
  No. 17 C 4008, 2018 WL 2096453 (N.D. Ill. May 7, 2018) ...........................13, 14

*Petrizzo v. DeVry Educ. Grp. Inc.*,
  No. 16 CV 9754, 2018 WL 827995 (N.D. Ill. Feb. 12, 2018) ...............................15

*Robinson v. Toyota Motor Credit Corp.*,
  775 N.E.2d 951 (Ill. 2002)....................................................................................14

*TBS Grp., LLC v. City of Zion, Illinois*,
  No. 16-CV-5855, 2017 WL 5129008 (N.D. Ill. Nov. 6, 2017) .............................11

*Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc.*,
  576 U.S. 519 (2015)...............................................................................9, 10, 11, 12

*Thrasher-Lyon v. Illinois Farmers Ins. Co.*,
  861 F. Supp. 2d 898 (N.D. Ill. 2012) ...................................................................13

*Trimuel v. Chicago Hous. Auth.*,
  695 F. Supp. 3d 972 (N.D. Ill. 2023) .....................................................................9

**Statutes**

Fair Housing Act, 42 U.S.C. § 3604(a)............................................................. *passim*

Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/2 ............. *passim*

**Rules**

Fed. R. Civ. P. 12(b)(1)....................................................................................................................2

Fed. R. Civ. P. 12(b)(6)...........................................................................................................2, 5, 11

**Introduction and Background**

As alleged in the First Amended Complaint (Doc. 53) ("FAC"), Defendant Hunter Properties, Inc. ("Hunter Properties"), "manages more than 2,500 apartments across 60 locations in Chicago," including many affordable apartments "located in safe and integrated neighborhoods." (FAC ¶ 11.) Prospective tenants may apply to one of Hunter Properties' buildings through an online housing application and are required to undergo a background check conducted by a third-party tenant screening provider. (*Id.* at ¶¶ 5–6.)

Plaintiff Legal Aid Chicago ("Plaintiff"), an organization that provides "legal representation to low-income tenants in housing-related matters," filed this lawsuit challenging the following language included in the online rental application terms and conditions on Hunter Properties' website: "Prior evictions filings will result in denial. False or misleading statements will result in denial." (*Id.* at ¶¶ 16, 33.) Plaintiff alleges that that Hunter Properties' policy of screening applicants for prior evictions has a disparate impact on the basis of race and sex in violation of the Fair Housing Act ("FHA"), 42 U.S.C. § 3604(a), and constitutes an unfair practice in violation of the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA"), 815 ILCS 505/2. (*Id.* at ¶¶ 86–102.) Plaintiff seeks injunctive relief and damages to compensate it for the resources it spends to combat policies such as the one allegedly implemented by Hunter Properties.

On September 30, 2024, this Court entered a Memorandum Opinion and Order (Doc. 48) ("*Legal Aid Chicago I*") dismissing Plaintiff's original Complaint for lack of standing. The Court held that Plaintiff did not sufficiently show any cognizable injury to the organization itself caused by Hunter Properties and aptly noted that if Plaintiff's allegations were enough for standing, "that would mean that any nonprofit organization would have standing to challenge a private party that makes achievement of the nonprofit's end goals more difficult or unlikely." *Id.* at ¶¶ 21–22.

1

The FAC once again alleges three causes of action under the theory of organizational standing: (1) race discrimination in violation of the FHA (Count I), (2) race and sex discrimination in violation of the FHA (Count II), and (3) unfair residential leasing in violation of the ICFA (Count III). The FAC should be dismissed with prejudice for the same reasons as stated as in *Legal Aid Chicago I* because, as with the original Complaint, the FAC fails to establish that Plaintiff has Article III standing in its own right. But even if Plaintiff could establish standing, the FAC fails to state a claim for the additional reasons that the Court did not need to reach in *Legal Aid Chicago I*. Specifically, the FAC fails to state a claim upon which relief can be granted because proximate cause is lacking; Counts I and II fail to sufficiently allege the elements of a disparate-impact claim; and Count III insufficiently alleges statutory standing, as well as the elements of an ICFA claim. Thus, the FAC is ripe for dismissal with prejudice under both Rule 12(b)(1) and Rule 12(b)(6).

<u>**Argument**</u>

**I.      Plaintiff Cannot Establish Subject Matter Jurisdiction.**

The FAC is subject to dismissal under Rule 12(b)(1) because Plaintiff lacks Article III standing. To establish standing, Plaintiff has the burden of showing that (1) it has suffered an "injury in fact" that is (a) "concrete and particularized" and (b) "actual or imminent, not 'conjectural' or 'hypothetical;'" (2) "a causal connection between the injury and the conduct complained of"; and (3) it is "'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561–62 (1992).

**A.      Plaintiff Fails to Sufficiently Allege any Injury in Fact.**

In *Legal Aid Chicago I*, this Court held that it lacked subject matter jurisdiction over Plaintiff's claims because the Complaint did not sufficiently allege any injury in fact. *Id.* at 25. While the FAC attempts to address this deficiency, it falls short.

As the Court previously noted, "Legal Aid Chicago invokes organizational standing, so it

must show an injury to the organization itself. Legal Aid Chicago has standing to challenge the policy of Hunter Properties if and only if it can establish an injury to the organization 'in its own right.'" *Id.* at 10 (citing *Disability Rts. Wis., Inc. v. Walworth Cnty. Bd. of Supervisors*, 522 F.3d 796, 801 (7th Cir. 2008)). Following an illuminating and judicious overview of controlling case law, this Court concluded "that an organization suffers a concrete injury if it devotes resources to combatting a discrete regulation or policy, at the expense of its other work." *Legal Aid Chicago I* at 12–17. "But the impact must be real and measurable – it must be 'perceptible.' And an organization cannot allege an injury in fact based on 'baseline' or 'ordinary program costs' of the work that it is already doing." *Id.* at 17–18 (citation omitted). *Legal Aid Chicago I* held that such an injury was not alleged in the Complaint, noting "Legal Aid Chicago has not pled a perceptible impairment of its *ability* to provide its services." *Id.* at 22, 25 (emphasis in original).

The FAC once again simply alleges that "Hunter Properties has made it harder for Legal Aid Chicago to accomplish its mission," which does not confer standing. *Legal Aid Chicago I* at 22. Specifically, the FAC alleges the following injuries to Plaintiff's mission and core activities:

> (1) by nullifying the effectiveness of Legal Aid Chicago's eviction defense because it has been forced to make substantive changes to its eviction defense services; (2) by nullifying sealing services because Hunter's actions have rendered those services meaningless; (3) by impairing its housing navigation services because Hunter's generally affordable housing in safe and desirable neighborhoods is no longer available to a large swath of clients; and (4) by impairing Legal Aid Chicago's legal services because Legal Aid Chicago has been forced to take on new/noncore activities, both legal and non-legal, to adequately serve clients.

(FAC ¶ 7.) These allegations merely reframe Plaintiff's prior deficient allegations that this Court described as "a list of what Legal Aid Chicago does to oppose no-evictions policies generally, meaning policies adopted by landlords in society at large." *Legal Aid Chicago I* at 11. The FAC does not allege that Plaintiff's clients have no other options for housing or that no other landlord imposes so-called no-evictions policies. Hunter Properties is just one of many landlords in Chicago

who screen tenants for prior evictions, and its challenged policy does not "'target' Legal Aid Chicago as an organization or formally restrict Legal Aid Chicago's ability to prevent evictions and displacement." *Id.* at 21. The FAC fails to correct these key deficiencies identified in *Legal Aid Chicago I* and, thus, is subject to dismissal for the same reason as the original Complaint.

In its Motion to Alter or Amend the Judgment (Doc. 51), Plaintiff tacitly acknowledges that Hunter Properties' challenged conduct does not force Plaintiff to take on work outside of its core mission by arguing that the challenged policy impairs Plaintiff's "ability to do work *within* its core mission," specifically tenant eviction defense representation. (*Id.* at 7.) But *Hunter Properties I* explains that the challenger must show "*additional or new burdens*" caused by the conduct, rather than activities "no different from the plaintiffs' daily operations" and cautions that the Supreme Court reined in the scope of organizational standing. *Id.* at 15–16, 18 (citing *F.D.A. v. All. for Hippocratic Med.*, 602 U.S. 367 (2024)). All activities the FAC alleges Plaintiff has been forced to undertake fall under the umbrella of Plaintiff's efforts to fight evictions and no-eviction policies generally, *see, e.g.*, FAC ¶¶ 75–78, and, thus, do not constitute a perceptible injury.

## B. Causation Is Lacking.

*Legal Aid Chicago I* also noted "causation is lacking" because "Legal Aid Chicago d[id] not allege that it had any interaction with Hunter Properties, apart from investigating a potential lawsuit." *Id.* at 12, 21. In response, Plaintiff added three paragraphs to the FAC regarding its interactions with Hunter Properties, alleging that Plaintiff directed two fair housing testers to call Hunter Properties posing as potential applicants with prior eviction records. (FAC ¶¶ 62–64.) The first tester was allegedly "informed the eviction would be a 'problem,'" and the second tester was allegedly informed she "would likely be denied because of the prior eviction record." (*Id.* at ¶¶ 62–63.) The first tester allegedly called back "posing as a different prospective applicant with no prior eviction history" and was encouraged to submit an application. (*Id.* at ¶ 64.) Based on these

allegations, Plaintiff jumped to the conclusion that "all of its clients with prior eviction histories would be categorically denied rental housing under Hunter's No-Evictions Policy, even if Legal Aid Chicago prevailed in having their eviction cases dismissed or sealing their prior eviction records." (*Id.* at ¶ 66.) But the alleged testers did not mention sealed evictions or even attempt to submit applications. Even if these calls are somehow considered separate from Plaintiff's pre-lawsuit investigation (they should not be), Plaintiff's conclusion is far too speculative and attenuated to support a causal connection between Hunter Properties' alleged conduct and the alleged impairment to Plaintiff's tenant eviction defense representation work. *All. for Hippocratic Med.*, 602 U.S. at 383 ("[T]he 'line of causation between the illegal conduct and injury'—the 'links in the chain of causation' . . . —must not be too speculative or too attenuated.").

### C. Redressability Is Lacking.

Redressability is lacking for the same reasons that causation is lacking. "The second and third standing requirements—causation and redressability—are often 'flip sides of the same coin.' If a defendant's action causes an injury, enjoining the action or awarding damages for the action will typically redress that injury." *Id.* at 380–81 (citation omitted). Plaintiff seeks injunctive relief, declaratory relief, and monetary damages. (FAC, Prayer.) These remedies are not sufficiently likely to redress Plaintiff's alleged injuries, if any, because the effect of Hunter Properties' challenged policy is too speculative, and Hunter Properties is only one of many landlords who screen tenants for prior evictions.

## II. The FAC Fails to State Any Claim Upon Which Relief Can be Granted.

The FAC is also subject to dismissal under Rule 12(b)(6) for the reasons that the Court did not need to reach in *Legal Aid Chicago I*. To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Factual allegations must be enough to raise a

right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Here, the FAC fails to sufficiently allege proximate cause, fails to sufficiently allege the elements of disparate impact, and fails to allege a viable ICFA claim.

### A. Plaintiff Cannot Establish Proximate Cause.

All of Plaintiff's claims fail because the FAC does not sufficiently allege that its injuries, if any, were proximately caused by Hunter Properties' conduct. The FAC alleges two claims for violation of the FHA and one claim for violation of the ICFA. Proximate cause is an essential element of a valid claim under both statutes. *See Bank of Am. Corp. v. City of Miami, Fla.*, 581 U.S. 189, 194 (2017) ("*City of Miami*") ("We also hold that, to establish proximate cause under the FHA, a plaintiff must do more than show that its injuries foreseeably flowed from the alleged statutory violation."); *Anthony v. Country Life Mfg., LLC.*, 70 F. App'x 379, 382 (7th Cir. 2003) ("To state a claim under the [ICFA], a plaintiff must allege: . . . that the deceptive act or unfair practice proximately caused the plaintiff's injury.").

In *City of Miami*, the Supreme Court explained that "proximate cause under the FHA requires 'some direct relation between the injury asserted and the injurious conduct alleged'" and alleged harms that are "'too remote' from the defendant's unlawful conduct" cannot establish proximate cause. *Id.* at 202–03. The Court further explained that "[t]he housing market is interconnected with economic and social life. A violation of the FHA may, therefore, 'be expected to cause ripples of harm to flow' far beyond the defendant's misconduct." *Id.* at 202. Nothing in the FHA, however, "suggests that Congress intended to provide a remedy wherever those ripples travel." *Id.* The applicable proximate cause standard generally does not permit going "beyond the first step" in the causal chain. *Id.* The Seventh Circuit has further stated that "foreseeability, directness, and the substantiality of the defendant's conduct" are all relevant to the proximate cause analysis. *Kemper v. Deutsche Bank AG*, 911 F.3d 383, 392 (7th Cir. 2018).

In the years since *City of Miami*, multiple courts in this district have applied the Supreme Court's analysis and found that certain claimed injuries were too remote from the alleged discriminatory acts to support proximate cause under the FHA. *See, e.g., Cnty. of Cook, Illinois v. Wells Fargo & Co.*, 314 F. Supp. 3d 975, 988 (N.D. Ill. 2018) (finding that, even if the defendant's conduct caused a disproportionate increase in foreclosures in minority communities, Cook County could not bring FHA claims based on attenuated harms such as "lost property tax revenue, increased demand for county services, and diminished racial balance and stability"); *Cnty. of Cook v. Bank of Am. Corp.*, No. 14 C 2280, 2018 WL 1561725, at *5 (N.D. Ill. Mar. 30, 2018) (holding "that the bulk of the injuries the County asserts—tax losses and increased costs for county services such as police patrol and support services to evicted borrowers—do not flow directly from the" defendant's alleged discriminatory lending practices).

In considering the bounds of proximate cause, the Seventh Circuit favorably cited a Ninth Circuit case applying *City of Miami*'s proximate cause analysis. *County of Cook v. Bank of America Corp.*, 78 F.4th 970, 792 (7th Cir. 2023) (citing *Oakland v. Wells Fargo & Co.*, 14 F.4th 1030, 1039, 1042 (9th Cir. 2021) (en banc)). The Ninth Circuit in *Oakland* reasoned that *City of Miami* rejected the foreseeability standard for an FHA claim and "instructed that the proper standard was the more stringent 'direct relation' standard, which requires 'some direct relation between the injury asserted and the injurious conduct alleged.'" 14 F.4th at 1035. The general tendency under this standard is not to go beyond the first step of the causal chain, but what "falls within that 'first step' depends in part on the 'nature of the statutory cause of action' and an assessment 'of what is administratively possible and convenient.'" *Id.*; s*ee also Wells Fargo*, 314 F. Supp. 3d at 987 ("*City of Miami* teaches that the proximate cause inquiry also requires 'an assessment of what is administratively possible and convenient.'").

These cases instruct that the direct injury here is to prospective tenants allegedly denied housing by Hunter Properties and that any subsequent injury to Plaintiff is beyond the first step in the causal chain, which is too remote to state a claim. *Cf. id* at 1035–36 ("There is no question that Oakland's theory of harm goes beyond the first step—the harm to minority borrowers who receive predatory loans."). The FAC alleges that the "FHA prohibits discrimination in rental housing on the basis of race and sex including by refusing to rent, refusing to negotiate for the rental of property, or otherwise denying a dwelling to a person because of race and sex." (FAC ¶ 91.) The first step is the discrimination and the harm from that conduct flows directly to those excluded from housing. Any subsequent harm to Plaintiff does not have a clear direct relation to conduct prohibited by the FHA, especially when, as here, that harm is even further removed, involves multiple steps, and separate actions carried out by separate parties (i.e., other landlords who filed the evictions and who apply similar policies). *See Oakland*, 14 F.4th at 1040 ("Oakland's 'theory of liability rests not just on separate actions, but separate actions carried out by separate *parties*,' in some cases third, fourth, or fifth parties.").

Substantiality is also lacking. Hunter Properties' role in the availability of affordable housing in Cook County is interconnected with numerous other landlords and third parties such that Hunter Properties' prospective tenant screening policies do not plausibly have more than a minimal impact on the system. Plaintiff's alleged harms could be caused by a wide array of factors outside of Hunter Properties' control, including, for example, the third parties who filed evictions against Plaintiff's clients, other landlords who screen potential tenants for prior evictions, and the third-party tenant screening companies identified in the FAC (FAC ¶ 41). The FAC does not allege any sequence of events leading to Plaintiff's alleged injuries that includes Hunter Properties' prospective tenant screening policies as a substantial factor, and simply directing Hunter Properties

to change these policies would not have any direct effect on the costs allegedly incurred by Plaintiff. Plaintiff will need to continue engaging in the exact same activities to help its clients apply to housing managed by one of the many other landlords who apply a similar policy.

Thus, Plaintiff's alleged injuries, if any, are too far removed from Hunter Properties' challenged conduct to establish proximate cause.

### B. Counts I and II Insufficiently Allege a Plausible Disparate-Impact Claim.

Plaintiff's FHA discrimination claims fail for the additional reasons that the FAC does not plausibly allege a statistical disparity caused by Hunter Properties' specific policy and does not satisfy the robust causality requirement set forth in *Texas Department of Housing and Community Affairs v. Inclusive Communities Project, Inc.*, 576 U.S. 519 (2015) ("*Inclusive Communities*").

"To establish a *prima facie* disparate-impact case [ ] plaintiffs must 'allege facts at the pleading stage or produce statistical evidence demonstrating a causal connection,'" which "boils down to three elements: (1) a statistical disparity; (2) a specific policy; and (3) a causal connection." *Huskey v. State Farm Fire & Cas. Co.*, No. 22 C 7014, 2023 WL 5848164, at *7 (N.D. Ill. Sept. 11, 2023). "[A]fter identifying a statistical disparity, the plaintiff must point to a defendant's policy or policies causing that disparity." *Bell v. Pappas*, No. 22 C 7061, 2024 WL 1702691, at *4 (N.D. Ill. Apr. 19, 2024) (quotation marks omitted); *see also Inclusive Communities*, 576 U.S. at 542 ("A disparate-impact claim that relies on a statistical disparity must fail if the plaintiff cannot point to a defendant's policy or policies causing that disparity."). The "robust causality requirement ensures that '[r]acial imbalance . . . does not, without more, establish a prima facie case of disparate impact' and thus protects defendants from being held liable for racial disparities they did not create." *Inclusive Communities*, 576 U.S. at 542; *see also Trimuel v. Chicago Hous. Auth.*, 695 F. Supp. 3d 972, 982 (N.D. Ill. 2023) ("The FHA requires a more robust causal connection at the motion to dismiss stage.").

In *Inclusive Communities*, the Supreme Court cautioned that "disparate-impact liability has always been properly limited in key respects that avoid the serious constitutional questions that might arise under the FHA, for instance, if such liability were imposed based solely on a showing of a statistical disparity." *Inclusive Communities*, 576 U.S. at 540. "Without adequate safeguards at the prima facie stage, disparate-impact liability might cause race to be used and considered in a pervasive way and 'would almost inexorably lead' governmental or private entities to use 'numerical quotas,' and serious constitutional questions then could arise." *Id.* at 542. Thus, courts are directed to "examine with care whether a plaintiff has made out a prima facie case of disparate impact" and to promptly resolve disparate-impact cases. *Id.*

While the Seventh Circuit has not yet provided guidance regarding the meaning or requirements of the robust causation element established in *Inclusive Communities*, several other circuits have considered this requirement, and the Fifth Circuit's well-reasoned decision in *Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890 (5th Cir. 2019), is particularity instructive. *Id.* at 904 (describing four different views among the Fourth, Eighth, and Eleventh Circuits and holding that plaintiff failed "to allege facts sufficient to provide the robust causation necessary for an actionable disparate impact claim" under any of those views).

In *Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, the Fifth Circuit considered whether plaintiff could state a disparate-impact claim based on defendants' alleged "blanket 'no vouchers' policy." *Id.* at 907. Plaintiff alleged that defendants' "refusal to negotiate with or rent to voucher holders disparately impact[ed] black households." *Id.* at 897. Plaintiff cited statistics relating to the racial makeup of voucher households and of defendants' apartment complexes in support of its claim. *Id.* In determining that these allegations did not support the robust causation requirement of *Inclusive Communities*, the Fifth Circuit reasoned that "geographical happenstance

cannot give rise to liability against an entity not responsible for the geographical distribution." *Id.* at 906. Plaintiff's allegations did not support an inference that the challenged policy "caused black persons to be the dominant group of voucher holders in the Dallas metro area." *Id.* at 907.

Here, the FAC alleges a racial imbalance in the pool of prospective tenants who have a connection to a past eviction, which is insufficient to state a prima facie disparate-impact case and satisfy the robust causality requirement. Plaintiff's theory appears to be that Hunter Properties "categorically denies rental housing to applicants who have ever been the subject of an eviction case," which must create a disparate impact because "Black people, and Black women in particular, are significantly more likely to be sued in an eviction action than their white counterparts." (FAC ¶¶ 3, 8.) Plaintiff devotes several paragraphs of the FAC to discussing statistical disparities in eviction filings. (*Id.* at ¶¶ 46–52.) "As *Inclusive Communities Project* reminds courts, however, racial imbalance is not alone sufficient to make out a disparate impact claim: causation is still required." *TBS Grp., LLC v. City of Zion, Illinois*, No. 16-CV-5855, 2017 WL 5129008, at *9 (N.D. Ill. Nov. 6, 2017) (granting Rule 12(b)(6) motion because the amended complaint was "devoid of allegations that plausibly suggest[ed] that [defendant had] *caused* the racially disproportionate impact that might result from the Ordinance" despite its offer of statistics showing "minorities [were] a disproportionate segment of [defendant]'s rental community").

Plaintiff's theory is entirely speculative as it does not allege an actual statistical disparity found in Hunter Properties' tenant population but merely alleges that one is possible because there is a statistical disparity in the pool of tenants who would be impacted by an alleged "No-Evictions Policy" if they attempted to complete an online rental application. As explained above, Plaintiff's allegations regarding a "blanket no-evictions policy" are not sufficiently supported, but even assuming for purposes of this motion that Hunter Properties strictly enforces such a policy, it would

not cause the statistical disparity of which Plaintiff complains. At least one other court in this district has considered whether statistical disparities existing before a defendant applies a particular policy can state a disparate impact claim and held that such allegations cannot survive a motion to dismiss because they do not adequately allege the policy caused the disparity. *See Bell*, 2024 WL 1702691, at *5 ("Absent a description of how Pappas's conduct resulted in the statistical disparities the plaintiffs cite, the plaintiffs have not plausibly alleged a causal link between these disparities and the defendants' policies."). Allegations that a defendant could have utilized "various strategies . . . to mitigate existing disparities" are insufficient. *Id.*

The FAC does not satisfy even a moderate interpretation of robust causation. Unlike in *Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, Plaintiff does not allege any statistics relating to the outcome of Hunter Properties' tenant screening process or the racial makeup of its apartment complexes. Plaintiff also does not allege that Hunter Properties' policy categorically excludes black women or that black women with a connection to prior evictions have been denied housing while white men with a connection to prior evictions have been allowed to rent. In effect, Plaintiff asks the Court to view a "No-Evictions" policy as synonymous with a no-black-women-tenants policy. Plaintiff does not allege that Hunter Properties is responsible for the racial makeup of Cook County residents with a connection to prior evictions, and it is entirely speculative whether the alleged "No-Evictions" policy caused an actual disparate impact. More is needed at the pleading stage to satisfy the safeguards of *Inclusive Communities* and ensure "prompt resolution" of disparate-impact cases. *See Inclusive Communities,* 576 U.S. at 521.

## C. Count III Fails to Allege a Viable Claim for Violation of the ICFA.

Count III alleges that Hunter Properties committed an unfair business practice in violation of the ICFA by "disqualifying all prospective tenants with any prior eviction." (FAC ¶ 95.) These allegations do not state a cognizable claim for violation of the ICFA, and Count III is ripe for

dismissal both for lack of statutory standing and failure to state a claim.

### 1. Plaintiff Lacks Statutory Standing under the ICFA.

In addition to lacking Article III standing for the reasons explained above, Plaintiff lacks statutory standing under the ICFA. To establish statutory standing under the ICFA, a non-consumer plaintiff "must plead the following: '(1) that [its] actions were akin to a consumer's actions to establish a link between [it] and consumers; (2) how defendant's representations . . . concerned consumers other than [plaintiff]; (3) how defendant's particular [action] involved consumer protection concerns; and (4) how the requested relief would serve the interests of consumers.'" *Thrasher-Lyon v. Illinois Farmers Ins. Co.*, 861 F. Supp. 2d 898, 912 (N.D. Ill. 2012); *accord Bonilla v. Ancestry.com Operations Inc.*, 574 F. Supp. 3d 582, 596 (N.D. Ill. 2021).

The FAC does not sufficiently allege any of these elements. First, Plaintiff is a legal aid organization that provides legal services (FAC ¶ 10), not a potential consumer of residential rental services. *See, e.g., CHS Acquisition Corp. v. Watson Coatings, Inc.*, No. 17-CV-4993, 2018 WL 3970137, at *13 (N.D. Ill. Aug. 20, 2018) (holding company did not have standing to bring ICFA claim because it "did not purchase the [subject goods] for its own use"); *Patel v. Zillow, Inc.*, No. 17 C 4008, 2018 WL 2096453, at *9 (N.D. Ill. May 7, 2018) (holding plaintiffs "failed to plausibly allege that their actions were akin to consumers' actions because Plaintiffs are selling real estate, and thus are not the potential buyers"). Second, Plaintiff's allegations relate to Hunter Properties' representations regarding prior evictions that effect only a small subset of potential tenants, those with eviction records who apply to rent an apartment managed by Hunter Properties. (FAC ¶ 95.) Plaintiff does not explain how this conduct is directed toward the market generally, and it is not significant enough to raise consumer protection concerns. *See MacNeil Auto. Prod., Ltd. v. Cannon Auto. Ltd.*, 715 F. Supp. 2d 786, 793 (N.D. Ill. 2010) ("The Seventh Circuit has noted that, for a non-consumer to have standing under the Consumer Fraud Act based on harm to consumers, the

complained-of conduct must 'be of sufficient magnitude to be likely to affect the market generally.'"). Finally, Plaintiff seeks damages on its own behalf, which does not serve the interests of consumers. (FAC ¶ 1.) *See Patel*, 2018 WL 2096453, at *9.

### 2. The FAC Also Fails to Plead a Cognizable ICFA Claim.

Even if Plaintiff could establish standing, the FAC does not state a coherent theory for unfair business practice in violation of the ICFA. To state an ICFA claim, Plaintiff must allege: "(1) a deceptive act or unfair practice"; (2) intent that Plaintiff "rely on that act or practice; (3) that the deception or unfair practice occur in the course of conduct involving trade and commerce;" and (4) proximate cause. *Anthony*, 70 F. App'x at 382. An ICFA claim also requires "actual pecuniary loss." *See Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010).

Courts consider the following in determining whether a practice is unfair under the ICFA: "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers." *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 961 (Ill. 2002). While a plaintiff need not establish all three criteria, the Court must consider the degree to which the practice meets one or more criteria. *See id.* at 961. The alleged practice of disqualifying applicants with eviction histories has been recognized as insufficient to constitute an unfair practice under the ICFA. *See Garrett v. RentGrow, Inc.*, No. 04 C 8309, 2005 WL 1563162, at *3–4 (N.D. Ill. July 1, 2005) (dismissing ICFA claim because landlord's "refusal to reexamine or reverse its denial" of plaintiff's rental application based on a prior eviction judgment was not an unfair practice because plaintiff "could have sought subsidized housing elsewhere" and the practice related "only to those few consumers who have potentially errant information in their [background] reports"). Like *Garrett v. RentGrow,* Hunter Properties' alleged conduct cannot satisfy the unfair practice element because the policy does not prevent prospective tenants from seeking housing from other landlords, was disclosed to prospective

tenants, and only impacts a small subset of prospective tenants with prior evictions.

In addition, Plaintiff does not allege how Hunter Properties intended consumers to rely on this allegedly unfair practice. *See Maxwell v. Sanofi-Aventis U.S. LLC*, No. 15-CV-10095, 2016 WL 3633321, at *4 (N.D. Ill. July 6, 2016) ("[T]he statute requires intent for both deceptive and unfair conduct."). The FAC is devoid of any allegations that Hunter Properties intended to apply its policies in a manner that is unfair or that it even knew tenants with sealed eviction records might be rejected or deterred from applying. *See Garrett*, 2005 WL 1563162, at *4 (finding that plaintiff failed to allege defendant "had an intent to deceive, defraud, or be unfair to her" or even that defendant knew it received false information regarding plaintiff's eviction history).

The FAC also fails to sufficiently allege proximate cause, even if the ICFA applies a more relaxed proximate cause standard than the FHA as discussed in Section II.A, *supra*. *See Anthony*, 70 F. App'x at 383 (finding that even if plaintiff's allegations rose to the level of unfair practice, plaintiff failed to allege that the unfair practice proximately caused an economic injury).

Finally, the FAC fails to allege any actual pecuniary loss. Plaintiff does not attempt to quantify, or propose any method for doing so, the value of the alleged resources it "was forced to divert" or of allegedly frustrating its mission. (*See* FAC ¶ 85.) *See Petrizzo v. DeVry Educ. Grp. Inc.*, No. 16 CV 9754, 2018 WL 827995, at *6 (N.D. Ill. Feb. 12, 2018) ("A consumer-fraud complaint . . . needs to allege facts sufficient to show that plaintiffs suffered actual, measurable, non-speculative damages."). Whether or not these damages support organizational standing, they are too speculative to satisfy the injury element of an ICFA claim.

## Conclusion

For the foregoing reasons, Hunter Properties respectfully requests that the Court dismiss Plaintiff's First Amended Complaint, with prejudice.

Dated: January 21, 2025

Respectfully submitted,

/s/ Maria A. Boelen

John S. Letchinger
Maria A. Boelen
Katharine H. Walton
**BAKER & HOSTETLER LLP**
One North Wacker Drive, Suite 3700
Chicago, IL 60606
Telephone: 312.416.6200
Facsimile: 312.416.6201
jletchinger@bakerlaw.com
mboelen@bakerlaw.com
kwalton@bakerlaw.com

*Attorneys for Defendant Hunter Properties, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date, January 21, 2025, a true and correct copy of the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all attorneys of record.

*/s/ Maria A. Boelen*